**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated:  October 19 2016**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.  15-32271 |
| | ) | |
| Claude Darus Lundy and | ) | **Chapter 13** |
| Chanda Marie Lundy, | ) | |
| | ) | |
| **Debtors.** | ) | **JUDGE JOHN P. GUSTAFSON** |

## MEMORANDUM AND ORDER RE: MOTION TO DISQUALIFY

This cause comes before the court on Debtor Chanda Lundy's Motion To Disqualify Judge John P. Gustafson from Future Proceedings Under 28 U.S.C. § 455 [Doc. # 130], and the Declaration Pursuant to 28 U.S.C. § 1746 of Chanda M. Lundy [Doc. # 136].

## FACTS

The Debtors in this case have filed prior bankruptcy cases, starting with a Chapter 7 case filed by Chanda Marie Hadden (now Debtor Chanda Marie Lundy) on July 21, 2004 in the Eastern District of Michigan, Case Number 04-60529, for which a discharge was entered on October 21, 2004.  A Chapter 13 case, Case Number 04-75709, was filed by Claude D. Lundy on December 20, 2004 in the Eastern District of Michigan, and dismissed without a discharge on or about October 23, 2007.  On October 17, 2007, a Chapter 13, Case Number 07-60912, was filed by Chanda Marie Hadden in the Eastern District of Michigan and was dismissed on December 18, 2008.  Another Chapter 13 case, Case Number 11-47329, was filed by Chanda Hadden in Michigan on March 18,

2011, and was dismissed on July 11, 2011.

The Debtors' first Ohio case was a Chapter 13, Case Number 15-30990, filed on March 31, 2015. The case was originally assigned to the Honorable Mary Ann Whipple on the "Successor Judge Docket", and then transferred to John P. Gustafson on April 10, 2015. [Case No. 15-30990, Doc. # 13]. That case was dismissed, without prejudice, for failure to make plan payments on June 26, 2015.

The present Chapter 13, Case Number 15-32271, was commenced through a "skeleton filing" by Claude Darus Lundy and Chanda Marie Lundy, on July 10, 2015. Because she had a prior Chapter 13 within one year, Debtor Chanda Lundy filed a Motion to Extend the Automatic Stay on July 20, 2015 [Doc. # 9], and that Motion was granted after a Hearing held on July 27, 2015. [Doc. # 19].

The Debtors did not file the required documents - the Schedules, Statements of Financial Affairs, Means Test, and Chapter 13 Plan - within Fourteen days, as required by Fed. R Bankr. P. 1007(c). An Order to Show Cause was issued based upon the failure to timely file the required documents (and other issues), giving the Debtors until August 10, 2015 to file the required documents. [Doc. # 13]. The Schedules, Statement of Financial Affairs and Means Test were filed on July 27, 2015. [Doc. # 16]. The Chapter 13 Plan was filed the next day. [Doc. # 17]. The original Chapter 13 Plan was 6 pages, estimating a percentage to unsecured creditors of 5%. [*Id.*].

On or before September 15, 2015, federal tax returns for the 2013 and 2014 tax years were provided to the Chapter 13 Trustee.

On September 17, 2015, the First Meeting of Creditors was held. [Doc. # 39]. A Stipulation was entered into by the Chapter 13 Trustee and the Debtors for: 1) a Motion to continue the Confirmation Hearing past the bar date; 2) the filing of an Amended Plan; 3) proof of insurance on the Artesian property; and 4) documentation of the pay-off date of a 401(k) loan. [Doc. # 38]. There was no indication in any of the filed documents that the First Meeting of Creditors was held open as is permitted by 11 U.S.C. § 1308(b).

An Objection to the proposed Chapter 13 Plan was filed by JP Morgan Chase Bank on September 25, 2015. [Doc. # 42].

The requirements for proof of insurance, providing a 401(k) loan payoff date, and the filing of an Amended Plan were met on or before October 2, 2015. [Doc. # 43]. Excluding pages relating

2

to the certificate of service, the Amended Plan was 7 pages, and estimated a percentage to unsecured creditors of 7%. [*Id.*].

JP Morgan Chase Bank filed an Objection to the Amended Plan on October 19, 2015. [Doc. # 47]. A second Amended Plan was filed on January 19, 2016 [Doc. # 50]. The second Amended Plan was 6 pages, and estimated a percentage to unsecured creditors of 5%. [*Id.*]. No certificate of service was filed with the second Amended Plan, resulting in the entry of a Show Cause Order. [Doc. # 66].

On January 19, 2016, at the first Hearing held on Confirmation, the Trustee noted that Debtor Claude Lundy had not filed tax returns for the years 2005 to 2012. Chanda Lundy stated that her husband had not been able to take off work and see the accountant, and that all returns had not been filed. The Trustee indicated that she would be filing a Motion to Dismiss based upon the failure to file tax refunds. The Hearing on Confirmation of the Chapter 13 Plan was continued to the same date as the Hearing on the Motion to Dismiss, March 29, 2016. [Doc. # 53].

The Chapter 13 Trustee filed a Motion to Dismiss on January 20, 2016. [Doc. # 54]. The Motion sought dismissal of the case based upon Debtors not maintaining the monthly payments of $1,261.64 that they had proposed in their earlier Chapter 13 Plans, and the Debtors' failure to file all required tax returns. The Motion to Dismiss states: "Debtor-Husband has failed to file tax returns for tax years 2005 through 2012. Debtor-Wife testified at the first meeting of creditors that she had failed to file state tax returns for tax years 2013 and 2014." [*Id.*].

The Debtors never provided any proof of service of the second Amended Plan, and on February 19, 2016, an Order was entered striking the second Amended Plan. [Doc. # 69].

On March 18, 2016, the United States, on behalf of the Internal Revenue Service, ["IRS"] filed an Objection to Confirmation of the Debtors' Chapter 13 Plan. [Doc. #74]. As grounds for the Objection, the IRS asserted that Debtor Claude Lundy had not filed tax returns for the 2009 to 2012 tax years, and the 2011 and 2012 returns were for taxable periods ending during the four years immediately preceding the filing date of the Chapter 13 Petition. The Objection specifically cited the Debtors' failure to comply with 11 U.S.C. § 1325(a)(9) and § 1308. [*Id.*]. The IRS did not seek dismissal of the case.

The Debtors filed a Response to the Trustee's Motion to Dismiss on March 22, 2016. [Doc. # 75]. The Response admitted that the Debtors were behind on payments, stating that a payment was

3

being made to bring the total monies paid to the Trustee to within $880 of being current. The Response attributed the payment deficiency to the need to make adequate protection payments directly. Debtors' Response also admitted the allegations that the tax returns for tax years 2005 to 2012 had not been filed by Claude Lundy, and that Chanda Lundy had not filed state tax returns for 2013 and 2014. [*Id.*, p. 3, ¶ 3]. "However, the Debtors' taxes will be filed by March 29, 2016 and served on the IRS as well to resolve their objections to confirmation." [*Id.*].

On March 29, 2016, the second Confirmation Hearing was held, along with the hearing on the Trustee's Motion to Dismiss. [Doc. ## 76-77]. The Trustee stated that she had not received monthly payments for the months of January and February, but that she had received a check on March 25, 2016 for $1,940.65. The day before the March 29 hearing, Chanda Lundy provided the Trustee with Federal tax returns for Mr. Lundy for the years 2005-2012, but the Trustee was not provided with any state or city tax returns, other than a Perrysburg city tax return for the 2013 tax year.

Chanda Lundy stated that she provided the Trustee with the state and city along with "all the Federal" tax returns the day prior to the hearing, but the Trustee, after personally going through the packet Mrs. Lundy had provided her the previous day, again stated that the state and city returns were not included with the Federal tax returns. Trustee had also not been provided with copies of Debtors' 2015 tax returns. When questioned by the Trustee and the court as to any tax liability regarding the state of Ohio, Mrs. Lundy stated that only she owed the state for one year. Due to a domestic issue regarding Mr. Lundy's ex-wife, Mrs. Lundy was unsure when she would be able to file their 2015 tax returns.

Based in part on the Objection filed by the IRS, the court informed the Lundys that the tax returns needed to be filed before Debtors' plan could be confirmed. Counsel for the IRS stated that they had received "some" of the missing tax returns for both Debtors, but it would take 4-6 weeks for the returns to be processed before the IRS' proof of claim could be amended. Further, the court noted an issue with Debtors' irregular plan payments and failure to make proper service to creditors on the second Amended Plan, which resulted in Debtors' second Amended Plan being stricken from the record. Because it appeared that progress was being made regarding tax returns being provided to the Trustee, albeit well outside the statutory time limit, the court continued the Confirmation Hearing and the Hearing on the Motion to Dismiss to June 14, 2016. The court also ordered the

4

Debtors to turn over all filed tax returns, and 401(k) payoff and profit sharing documentation, to the Trustee. The court did not grant the Chapter 13 Trustee's Motion to Dismiss.

It should be noted that most decisions have held that the statutes in issue allow a bankruptcy court no discretion if a party has requested dismissal or conversion for failure to timely file required tax returns. *See*, *United States v. Cushing (In re Cushing)*, 401 B.R. 528, 538 (1st Cir. BAP 2009)("the Debtor failed to file the tax returns within the time specified in § 1308; . . . the Debtor was given notice of the motion to dismiss and argued the same in a non evidentiary hearing. Consequently, § 1307 mandates the dismissal or conversion of the case."); *In re Chassie*, 2011 WL 133007 at *1, 2011 Bankr. LEXIS 137 at **1-2 (Bankr. D. Mass. 2011)("Pursuant to Bankruptcy Code § 1307(e) I must either dismiss or convert a case, whichever is in the best interest of the creditors and the estate, on request of a party in interest or the United States trustee if a debtor fails to file a tax return as required by § 1308(a). The Debtors have failed to file their 2008 tax return within the time frame set forth in § 1308(a) and therefore I must decide whether dismissal or conversion is warranted. I have no discretion beyond the choice of these two drastic results."); *In re Broussard*, 2009 Bankr. LEXIS 1440, 2009 WL 1531817 (Bankr. W.D. La. 2009); *In re Kuhar*, 391 B.R. 733, 739 (Bankr. E.D. Pa. 2008)("Having found that Debtor has not complied with § 1308, the Court must dismiss or convert this case to one under Chapter 7, 'whichever is in the best interests of the creditors and the estate.'"); *In re Perry*, 389 B.R. 62, (Bankr. N.D. Ohio 2008); *In re Forte*, 2007 WL 2028894, at *4, 2007 Bankr. LEXIS 2373 at **13-14 (Bankr. E.D. Pa. July 6, 2007)("Apparently, Congress intended that relief under section 1307(e) is not discretionary."); *In re Sawyer*, 2007 WL 1725627 at *5, 2007 Bankr. LEXIS 2036 at *15 (Bankr. E.D. Va. 2007)("Indeed, as the statute is phrased, the court is *required* to ("shall") dismiss or convert the case. . . ")(emphasis in original); *see also*, *In re Lachney*, 2014 WL 5339372, 2014 Bankr. LEXIS 4503 (Bankr. W.D. La. Sept. 3, 2014).

Because the First Meeting of Creditors was not "held open" under 11 U.S.C. § 1308(b)[1], this Chapter 13 case was subject to dismissal from the time the Debtors' § 341 Meeting was concluded

---

[1]/ Section 1308(b) (1) states: "Subject to paragraph (2), if the tax returns required by subsection (a) have not been filed by the date on which the meeting of creditors is first scheduled to be held under section 341(a), the trustee may hold open that meeting for a reasonable period of time to allow the debtor an additional period of time to file any unfiled returns . . ." There are time limits beyond which the meeting of creditors cannot be held open. *See*, 1308(b)(1)(A) - (B).

5

on September 17, 2015. There is case law stating that the failure to timely file returns under § 1308 is not curable by the filing of returns after the statutory deadlines have passed. *See*, *In re McCluney*, 2007 Bankr. LEXIS 2088, 2007 WL 2219112 (Bankr. D. Kan. 2007)(concluding that court lacked discretion and could only decide to convert or dismiss even though late returns filed).

At the June Confirmation Hearing and Hearing on the Trustee's Motion to Dismiss [Doc. # 86], the Trustee stated on the record that Debtors had provided copies of the Federal returns through the 2014 tax year. Counsel for IRS indicated that her client had amended its proof of claim to reflect that they had also received copies of the Federal returns. However, the state returns had not been provided on Mr. Lundy's behalf, so the Trustee was unable to ascertain the status of Debtors' Ohio liability. The Trustee stated she had received no plan payments in April, and a payment of $600 in May. Before the hearing began, Mr. Lundy gave the Trustee a packet of papers, on top of which was a copy of a money order in the amount of $1,525.00. Since the March hearing, the Trustee stated that she had received the 401(k) payoff information, as was ordered at the conclusion of that hearing, but the Trustee had not yet received any tax returns for 2015. Mrs. Lundy indicated that the 2015 returns had not been filed, but that she estimated the Debtors would owe roughly $4,000.00 in Federal taxes for 2015.

In response to the Trustee raised the issue of a cram down payment for one of Debtors' vehicles, Chanda Lundy stated that just before the hearing began, she filed a new Amended Plan wherein the Debtors would surrender the vehicle. Mrs. Lundy stated that based upon conversations with the IRS, she believed the IRS would also be filing an amended claim. At that time, the court had not yet had the opportunity to review the new proposed Plan, as it had to be scanned and then docketed electronically. Moreover, Plan confirmation could not go forward due to insufficient notice to parties in interest. *See*, Fed. R. Bankr. P. 2002(b).

The Trustee asked to move forward with presentation of the Motion to Dismiss, based on the court's Order entered after the March 29th hearing, requiring Debtors to maintain full Plan payments on a timely basis, which the Trustee asserted had not been done. [Doc. # 78]. The Trustee also requested dismissal because she had not received copies of Debtors' complete state returns and because the Debtors' Chapter 13 case had been filed nearly one year earlier. Although Section 1308(b)(1)(A) provides that, under certain circumstances, tax returns can be filed as late as 120 days after the first date set for the first meeting of creditors, the Trustee pointed to the fact that it was now

6

nearly 240 days after the first meeting set for creditors.

Mrs. Lundy stated that "in the last amended plan . . . [Debtors] had suspended the May payment to be paid with the June amount." The $1,525.00 amount, represented by the photocopy of the money order, included all of May's payment. Mrs. Lundy said that the money order had already been placed in the mail.

Mrs. Lundy also stated that she filed a Motion that morning to allow a late filed claim for the state of Michigan and for the city of Perrysburg, which would add a liability of $1,836.00 owed to the city of Perrysburg and a liability of $4,967 owed to the state of Michigan.

The Trustee's estimate at the hearing was that the Debtors' total delinquency was $2,481.03, but because multiple amended plans had been filed, the amounts "had probably been changing," and additional claims would change the amounts in the Trustee's calculations.

The court did not dismiss the case. Instead, the Confirmation Hearing and the Hearing on the Motion to Dismiss were continued to July 26, 2016. The court ordered that Debtors were to properly serve the Amended Plan that was filed on June 14, 2016 within 7 days from the date the order docketed at Doc. # 88 was entered, and copies of all state tax returns were to be produced to the Trustee within 14 days from the date the same order was entered. [Doc. # 88]. Also, the aforementioned money order was to be provided to the Trustee in the same 14-day time period. [*Id.*].

The continued hearings on the Trustee's motion to dismiss and plan confirmation were held on July 26, 2016. [Doc. ## 115, 116]. Responding to a question from the Trustee, Counsel for the IRS stated that the IRS had no objections to confirmation, as the IRS believed that the amended chapter 13 plan appropriately addressed the unsecured and secured portions of the plan, and the IRS had received Debtors' tax returns.

However, the Trustee did not recommend confirmation due to the plan language that was used. Specifically, the amended plan included payment suspensions for prior payments. The amended plan also designated that the plan length would run from the date of confirmation, as opposed to the date of filing[2], and the date of filing is what the Trustee would use for the 60-month plan. The plan also called for the 100% turnover of Federal tax refunds but made no reference to the state tax refunds. Debtors' plan also used a "base plan", and the payment proposed under the

---

[2]/ As discussed below, the majority view in the case law suggests that the proper date for calculating plan length is measuring from the date the first payment is due under 11 U.S.C. § 1326(a).

7

plan ($689.56) would pay out 1% to the unsecured creditors, and with the 401(k) loan pay-off step-up[3], 4% would be paid out to the unsecured creditors. The Trustee requested that the percentage be identified in a stipulation, as well as having the terms of the 401(k) step-up stated specifically.

Additionally, the Trustee requested that language regarding Mr. Lundy's profit-sharing from his current employer be paid into the plan. There were hand-written changes made to the plan, and the Trustee wanted Debtors to clarify the changes. Lastly, the amended plan attached 5 pages of "Additional Terms, Conditions and Provisions", which is apparently from a form Chapter 13 plan that has been used in Michigan. These are the separate pages that contain the "boiler plate" provisions. After the Trustee reviewed the pages to identify whether the Michigan language contradicted this jurisdiction's procedures, she found that the pages included a section that stated "not to incur debt over $2,000", where the court's jurisdictional standard was $1,000.00.

Chanda Lundy objected to the fact that the Trustee had not filed a written objection to the Plan. She stated that she had used a Michigan form plan, and asked to go forward with confirmation of the Plan as filed. The court inquired as to whether Debtors would be able to make the requested plan changes, which would have included changing the date for measuring the 60 month period from the date of confirmation, and eliminating the additional pages of "boilerplate" provision from the Michigan Plan. While she was amendable to considering some changes, including the measurement of Plan length, she would not agree to removing the pages of "boilerplate" provisions from the Michgan Plan.

Mrs. Lundy was unhappy with the practice in this court's district, as she had previously worked as a paralegal/case analyst for a trustee, in a different district, and had prepared the dockets for said trustee "two weeks in advance." The Trustee expressed to Mrs. Lundy that she was not being treated any differently than any other attorney would be treated in the same courtroom. When asked by the Trustee whether she would like to try to confirm the plan, Mrs. Lundy stated that "we can go forward with confirmation."

Mrs. Lundy stated that she would not be able to remove the "boiler plate" provisions, "because . . . the boilerplate language [on page 8] . . . explains to the Trustee how she is to set her . . .payments up for the claims to be paid, based on the class and the creditor." This language was a problem for the Trustee, because the normal procedure in the district is to use a pro rata system.

---

[3]/ *See*, *Seafort v. Burden (In re Seafort)*, 669 F.3d 662 (6th Cir. 2012).

8

The Michigan boilerplate may not permit that pro rata system.

When it became clear that there would not be a negotiated resolution to the confirmation issues that would include removal of the "boilerplate" provisions, the court ordered that the Trustee file written objections to confirmation within 21 days, and that the hearing on the Trustee's motion to dismiss be continued to September 8, 2016.[4] [Doc. # 119]. The court also ordered that an evidentiary hearing on confirmation of the plan would be held on the same day. [Doc. # 120].

The Trustee filed an Objection to the Chapter 13 Plan on August, 16, 2016. [Doc. #128].

On August 30, 2016, Chanda Lundy filed a Motion to Disqualify Judge John P. Gustafson From Future Proceedings Under 28 U.S.C. § 455. [Doc. #130][5]. On the same day, Claude and Chanda Lundy filed Debtor's Response to the Chapter 13 Trustee's Untimely Objections and Motion that the Court Overrule the Objections. [Doc. #131].

Although no response was filed, nor hearings held, Chanda Lundy filed a second pleading on September 9, 2016, captioned Declaration Pursuant To 28 U.S.C. § 1746 Of Chanda Lundy. [Doc. #136].

## LAW AND ANALYSIS

Section 455(a) states: "Any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The statute imposes an objective standard: judges must disqualify themselves "where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013) (citation omitted); *see also*, *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993); *Reed v. Rhodes*, 179 F.3d 453, 467 (6th Cir.1999). The Sixth Circuit has explained that: "The standard is an objective one; hence, the judge need not recuse himself based on the 'subjective view of a party' no

---

[4]/ The hearings scheduled for September 8th were later vacated, due to the Debtors pending Motion to Disqualify.

[5]/ There is no indication in the pleadings that Chanda Lundy is attempting to represent her co-Debtor Claude Darus Lundy. Generally, a pro se debtor may only represent themselves. *See*, *Smith v. Schmidt*, 2007 U.S. Dist. LEXIS 41901 at **2-5 (S.D. Tex. June 8, 2007); *Hernandez v. Hoffman*, 1996 U.S. Dist. LEXIS 16488 at *6 (E.D.N.C. October 8, 1996); *and see generally*, *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008)(privilege to represent oneself *pro se* provided by 28 U.S.C. § 1654 is personal to litigant and does not extend to other parties/entities); *Johns v. Cty of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) (non-attorney may appear *pro se* on own behalf, but has no authority to appear as an attorney for others than himself).

9

matter how strongly that view is held." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir.1990) (*quoting Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir.1988), *cert. denied*, 488 U.S. 1018, 109 S. Ct. 816, 102 L. Ed. 2d 805 (1989)).

Further, a judge should disqualify him or herself for "personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1).

Bankruptcy Rule 5004(a) states that "[a] bankruptcy judge shall be governed by 28 U.S.C. §455[6], and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstances arises or, if appropriate, shall be disqualified from presiding over the case." Thus, bankruptcy courts have the flexibility to find disqualification to be appropriate from an adversary proceeding or a particular contested matter. They are not limited to blanket disqualification from the entire bankruptcy case. *See*, *In re Apex Oil*, 981 F.2d 302, 304 (8th Cir. 1992); *In re Norton*, 119 B.R. 332, 340 (Bankr. N.D. Ga. 1990).

While 28 U.S.C. § 455 imposes a duty on the court to recuse where any of the statutory grounds exist, there is a corresponding duty not to do so if cause for recusal has not been shown. *See*, *In re Royal Manor Mgmt.*, 525 B.R. 338, 379-380 (6th Cir. BAP 2015)("a federal judge also has a mandatory duty not to recuse unless that standard has been met."); *In re Haas*, 292 B.R. 167, 175 (Bankr. S.D. Ohio 2003)(citing cases); *see also*, *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th Cir. 2002); *Walker v. Bishop*, 408 F.2d 1378, 1382 (8th Cir. 1969)(stating that a judge's duty not to recuse when unwarranted is just as important as a judge's duty to recuse when required).

The burden is on the moving party to justify disqualification. *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999).

The Supreme Court has held that litigants seeking disqualification of a federal judge based upon impressions formed during hearings before the court have a very difficult standard to meet.

---

[6]/ 28 U.S.C. Section 144 does not apply to bankruptcy judges. *See Ginger v. Cohn*, 255 F.2d 99 (6th Cir. 1958)(28 U.S.C. § 144 did not apply to bankruptcy referees, it only applies to district judges).(28 U.S.C. § 144 did not apply to bankruptcy referees, it only applies to district judges); *James C. Robinson Critique Servs., LLC v. Steward (In re Steward)*, 2016 WL 3629028 at *4, 2016 U.S. App. LEXIS 12492 at *13 n.7 (8th Cir. July 7, 2016); *In re Smith*, 317 F.3d 918, 932 (9th Cir. 2004); *In re Byers*, 509 B.R. 577, 581 (Bankr. S.D. Ohio 2014)("It is well established that 28 U.S.C. § 144 does not apply in bankruptcy court."); *Rhiel v. Hook (In re Johnson)*, 408 B.R. 123, 125 (Bankr. S.D. Ohio 2009); *Barna v. Haas (In re Haas)*, 292 B.R. 167, 175 (Bankr. S.D. Ohio 2003); *In re Erchak*, 180 B.R. 466, 467-468 (Bankr. N.D. W.V. 1994); *In re Norton*, 119 B.R. 332, 334 (Bank. N.D. Ga. 1990).

*See*, *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).

> Expressing an opinion about litigation is not a reason for recusal. *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474 (1994)("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."). The Court has stated that "[n]ot establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after being confirmed as federal judges, sometimes display." *Id*. at 555-56. Rather, bias must either be based on an extrajudicial source, which is not alleged, or because it is undeserved or excessive in degree or the behavior is "so extreme as to display clear inability to render fair judgment . . . ." *Id*. at 550-51. *See also Schilling v. Heavrin (In re Triple S Rests., Inc.)*, 422 F.3d 405, 417 (6th Cir. 2005) (affirming bankruptcy judge's denial of motion to recuse when the record lacked "concrete examples of hostility.").

*In re Royal Manor Mgmt.*, 525 B.R. 338, 379-380 (6th Cir. BAP 2015), *aff'd, Grossman v. Wehrle (In re Royal Manor Mgmt.)*, 2016 Fed App. 0324N (6th Cir. June 15, 2016)("We agree with and adopt the portion of the BAP opinion addressing recusal, and its determination that the bankruptcy court did not abuse its discretion by denying Grossman's motions to recuse, *In re Royal Manor*, 525 B.R. at 380-84."); *see also*, *Badalyan v. Holub (In re Badalyan)*, 2000 WL 924591, 2000 U.S. App. LEXIS 15718 (6th Cir. June 26, 2000)(affirming denial of *pro se* Chapter 13 debtor's motion to disqualify bankruptcy judge).

Chanda Lundy's two filings in support of disqualification set forth a number of complaints about this court. The first filing is captioned "Motion to Disqualify Judge John P. Gustafson from Future Proceedings Under 28 U.S.C. § 455" [Doc. #130], filed on August 30, 2016. The pleading is 17 pages, excluding the proof of service. The document includes a "Declaration Pursuant to 28 U.S.C. § 1746 of Chanda M. Lundy". [Doc. #130, p. 10].

The allegations can be summarized as follows:

●  John P. Gustafson was the Chapter 13 Trustee prior to his appointment to the bench.

●  The Chapter 13 Trustee, Elizabeth Vaughan, was Staff Attorney for John P. Gustafson when he was the Chapter 13 Trustee.

●  At the July 26, 2016 Confirmation Hearing, the Lundys' Chapter 13 Plan was not confirmed, even thought the Chapter 13 Trustee had not objected to the Plan. During the Hearing,

11

Chanda Lundy states the she was "rudely cut off" by the court. The court also is alleged to have stated that if she did not like the court's decision she should appeal, but that the court failed to issue an appealable order. Further, setting an Evidentiary Confirmation Hearing was contrary to the Code, as was allowing the Chapter 13 Trustee to file objections to the Chapter 13 Plan prior to the rescheduled Confirmation Hearing in violation of Fed.R.Bank.P. 3015(a).

● That there are local Chapter 13 practices in the Western Division, and the Trustee and the court are prejudiced in favor of these practices (because as Trustee, John P. Gustafson practiced under, or created, these local practices). The local bar is afraid to challenge these practices, that there is an "unhealthy environment", and other debtors are being deprived of "informed and code educated" attorneys. [Doc. #130, pp. 11-12].

● That the failure to amend the pamphlet to Chapter 13 debtors, and change the gender references from "he" to "she" for the Trustee, is evidence that an improperly close relationship continues to exist.

● That John P. Gustafson has not purged himself of the "Spirit of the Trustee" and accepted the "Spirit of the Court", and does not care about the Bankruptcy Code or the Spirit of the Code, and cannot separate the Code from local practices.

● That Chanda Lundy believes that the court will not be fair to her because of the former Trustee/Staff Attorney relationship between the former Trustee, now Judge, and the former Staff Attorney, now Trustee.

● That the practices of this court compare unfavorably to those in the Eastern District of Michigan, where Chanda Lundy previously worked for a debtor law firm and a Chapter 13 trustee. That the Debtors' Plan was not confirmed based upon the Chapter 13 Trustee's issues with the Plan, despite the Trustee not having filed an Objection to the Plan.

● That Chanda Lundy believes that the Trustee and the court have discussed her case and assumed facts about her.

● There is an attempt to make a statistical argument for bias. [Doc. #130, pp. 1-2, 8].

The second filing, on September 9, 2016, is captioned "Declaration Pursuant to 28 U.S.C. § 1746 of Chanda M. Lundy". [Doc. #136]. There were no hearings involving the Debtors held between the Motion to Disqualify and filing of the second Declaration, which is 13 pages long, excluding exhibits.

The new allegations[7] in the second Delcaration can be summarized as follows:

• The Trustee was disrespectful to her, and she believes that the Trustee learned this behavior from John P. Gustafson, and "no one was brave enough to call them both out on it." [Doc. #136, p.2].

• The continuance is costing the Debtors more money.

• Treating the Debtors like a game of Monopoly.

• She states "I refuse to pay her [the Chapter 13 Trustee] to rape us of our rights and property." [Doc. #136, p. 5].

The second Declaration then discusses notice issues, regarding the Evidentiary Confirmation Hearing that was cancelled based upon the Motion to Disqualify. She states that the September 2, 2016 order had not yet been received by the Debtors as of September 9, 2016. On September 8, 2016, the court issued an Order denying Chanda Lundy's Motion to Alter or Amend August 2, 2016 Order Denying Debtors' Request for Electronic Notice. [Doc. #135]. *See also*, *In re Lundy*, 2016 WL 4706044, 2016 Bankr. LEXIS 3284 (Bankr. N.D. Ohio September 8, 2016)[8]. Much of the balance of the second Declaration is in bold, and reflects harsher allegations, specifically:

• That reason for the original August 2, 2016 order, denying the Motion for electronic service, was because "we are Pro Se African American debtors". [Doc. #136, p. 7].

• "I honestly question this Court's integrity." [Doc. #136, p. 8].

• That "the true issue is the fact that I am a Pro Se Debtor, an African American Debtor, and Female Debtor that this court doesn't respect as a person with rights through its representative John P. Gustafson." [Doc. #136, p. 9].

• That: "No judge in their right mind acts like this."

• That orders regarding objections to claims had not been signed, even though there were no objections, and that they were being held out of "spite".

Chanda Lundy's subjective belief in these statements is not the issue. Rather, the court must determine whether "a reasonable person with knowledge of all the facts would conclude that the

---

[7]/ Many of the allegations are the same as those set forth in the previously filed Motion to Disqualify.

[8]/ The Supreme Court has noted that, under Section 455(a), "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).

13

judge's impartiality might reasonably be questioned." *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013).

   1.    **Issues Regarding Debtors' The Proposed Plan.**

It appears that Debtor Chanda Lundy's primary issues center on the court's decision on July 26, 2016 to not confirm her Chapter 13 Plan, despite the absence of a written objection filed by the Chapter 13 Trustee.  Chanda Lundy's legal argument appears to be as follows: Section 1325(a) states that "the court shall confirm a plan" if the provisions of that subsection are met.  The Trustee did not file a timely objection under Fed. R. Bankr. P. 3015(f).  Therefore, this court does not respect the Code (and the Rules), and this, in turn, supports the various accusations of bias.

There are at least two problems with this argument.  The first problem is the issue of "good faith" and the way bankruptcy courts generally handle making a finding on that issue. As Collier notes, Rule 3015(f) permits the bankruptcy court, in the absence of objection, to determine that a Chapter 13 Plan has been proposed in good faith and not by any means permitted by law without hearing evidence. 9 Collier on Bankruptcy, ¶ 3015(f).02 at 3015-5 (16th ed. 2013).  However, "[t]he language of the rule is permissive; the court is not *required* to overlook the good faith issue in the absence of it being raised by objection." *Id*. at n. 7 (emphasis in original).  "Indeed, the practice in most courts in cases in which there is no objection to confirmation is to confirm a plan upon recommendation of the standing trustee without taking evidence on any issue." *Id*.

Chanda Lundy asserts that the Trustee's objections filed on August 16, 2016 do not "prove that my plan was . . . filed in bad faith". [Doc. #130, p. 8].  However, it is not the Chapter 13 Trustee's burden to prove bad faith.  Rather, it the Debtors' burden to prove good faith. *See, Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir. 1990); *In re Gomery*, 523 B.R. 773, 783-784 (Bankr. W.D. Mich. 2015).

In this case, the Chapter 13 Trustee was willing to recommend confirmation, but only if the "boilerplate" provisions were excluded and the time for measuring the 60 month period were changed by stipulation.  Chanda Lundy stated that the Debtors were unwilling to agree to confirmation of their Chapter 13 Plan on that basis, so confirmation of the Chapter 13 Plan was set for evidentiary hearing.

There are a number of issues regarding good faith in this case, including multiple previous

bankruptcy filings as set forth above[9], the failure to timely file and provide the Chapter 13 Trustee with tax returns, and the specific provision of the most recently filed proposed Chapter 13 Plan.

For example, the proposed Plan [Doc. #84, p. 11, §T] would, upon confirmation, appear to include a provision making a finding of fact by the court. The provision states, in part: "All tax returns which have become due prior to the filing of the Plan have been filed." At the time of the Hearing on July 26, 2016, the court has no basis for finding that all tax returns that came due prior to the filing of the Plan, which would appear to include city and other local returns, had been filed. Moreover, the 2015 tax returns had been an issue throughout the case - and there was no information that the Debtors' 2015 federal, state and local returns have been filed on or before the July 26, 2016 Hearing. In fact, what evidence the court had suggested the 2015 tax returns were not all filed at that time[10]. Courts should avoid making factual findings that are false, and the statement in the "boilerplate" provisions that all tax returns that became due prior to filing of the Debtors' Plan had been filed was, at best, unsupported by evidence as to its truth as of July 26, 2016.

Similarly, under Section K, subparagraph 3 of the July 14, 2016 Plan, it states that "For all assumed executory contracts and unexpired leases, confirmation of the Plan shall constitute a finding that this Plan complies with all requirements for assumption of the executory contracts and unexpired leases being assumed, including all requirements set forth in 11 USC §365(b)." [Doc. #84, p. 9]. This was no evidentiary foundation for the court to make such a finding.

There are also "good faith" concerns based on the number of provisions that may, or may not, be applicable to this case. Sections B, C and D of the July 14, 2016 Plan deal with attorney fees. [Doc. #84, p. 8]. *See e.g.*, *In re Rose*, 2015 WL 151221 at *3, 2015 Bankr. LEXIS 176 at *7 (Bankr. W.D. Mich. Jan. 12, 2015)("Additional provisions should not be included in the plan unless directly applicable to a debtor's situation."). What are the good faith reasons for including those provision if they do not apply?

There is also a provision, Section U, where it appears there may have been an alteration from

---

[9]/ The non-exclusive list of factors to consider regarding the issue of "good faith" in Chapter 13 includes: "(8) the frequency with which the debtor has sought relief before in bankruptcy;". *Alt v. United States (In re Alt)*, 305 F.3d 413, 419 (6th Cir. 2002).

[10]/ A docket entry on September 14, 2016 reflects that the Chapter 13 Trustee received "proof of tax returns" for the 2015 tax returns on September 12, 2016. However, at the time of the July 26, 2016 confirmation hearing, the court had no evidence that the 2015 returns had been filed.

15

the original - or it may be a drafting error in the original document. The caption states: "DEBTOR DUTY TO MAINTAIN INSURANCE - REMEDY FOR FAILURE TO MAINTAIN INSURANCE." The provision itself states, in total: "Debtor shall maintain all insurance required by law and contract upon property of the estate and the debtor's property." There is no language regarding a remedy, even though the heading appears to contemplate setting forth a remedy. Again, this is the kind of issue that will need to be addressed at an evidentiary hearing on, among other issues, good faith.

Finally, it appears there may be an internal contradiction in the proposed Plan. [Doc. # 84]. Section L(3) states that failure to pay supplemental claims will not preclude a discharge, and that the balance will be nondischargeable. However, completion of the Plan, under Section (J)(4), requires the debtor to remit a sum sufficient to pay all allowed claims as amended or supplemented. Perhaps this apparent contradiction[11] is because the court lacks familiarity with this particular plan's language, but that is an additional reason to have a final evidentiary hearing with sufficient time for Debtors to provide the court with an explanation.

While the issues relating to good faith are important, the bigger problem for Chanda Lundy's position that the failure to confirm her most recent Chapter 13 Plan was somehow improper is the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). The *Espinosa* decision did two things: 1) it clarified how powerful a confirmed Chapter 13 Plan could be, making it clear that even Plan provisions that were contrary to the Code would - under certain circumstances - be enforceable; and 2) it directed bankruptcy judge to independently review Chapter 13 Plans and not confirm them if they violated the Bankruptcy Code even in the absence of any objection.

*Espinosa* specifically states that failure to comply with a a code provision "should prevent confirmation of the the plan, even if the creditor fails to object, or appear in the proceeding. . . ." *Espinosa*, 559 U.S. at 276-277, 130 S.Ct. at 1380, 176 L.Ed.2d at 173. The Opinion further stated that contrary to what the Court of Appeals had held, "the Code makes plain that bankruptcy courts have the authority--indeed, the obligation--to direct a debtor to conform his plan to the requirements

---

[11]/ To be confirmed, a Chapter 13 plan must be feasible. *See*, 11 U.S.C. § 1325(a)(6); *In re Capodanno*, 94 B.R. 62, 64 (Bankr. E.D. Pa. 1988)("[The] feasibility of a Plan is an absolute prerequisite to confirmation."). "Debtors have the burden to prove that their plans are feasible." *In re Jensen*, 425 B.R. 105, 110 (Bankr. S.D.N.Y. 2010).

16

of [the Code]." *Id*., 559 U.S. at 277, 130 S.Ct. at 1381, 176 L.Ed.2d at 174.

In footnote 14, the direction to bankruptcy courts is even stronger, and does not limit its admonishment to just provisions that violate the Bankruptcy Code itself: "In other contexts, we have held that courts have the discretion, but not the obligation, to raise on their own initiative certain nonjurisdictional barriers to suit. *See Day v. McDonough*, 547 U.S. 198, 202, 209, 126 S. Ct. 1675, 164 L. Ed. 2d 376 (2006) (statute of limitations); *Granberry v. Greer*, 481 U.S. 129, 134, 107 S. Ct. 1671, 95 L. Ed. 2d 119 (1987) (habeas corpus petitioner's exhaustion of state remedies). Section 1325(a) does more than codify this principle; it *requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue." *Id*. (emphasis in original).

The *Espinosa* decision clarified the bankruptcy judge's role in Chapter 13 confirmation hearings. After *Espinosa*, bankruptcy judges have a mandatory role in Chapter 13 confirmation hearings, following the directives of the Supreme Court. Thus, while a Chapter 13 Trustee may have objections to a Plan, the court has an independent duty in determining whether or not a Plan complies with the law and should be confirmed. In following *Espinosa*, a bankruptcy judge is not acting as a Chapter 13 Trustee.

While the Debtors are entitled to make their arguments in favor of confirmation at a future evidentiary confirmation hearing, there appear to be four ways in which the proposed plan fails to comply with either the Code, the Federal Rules of Bankruptcy Procedure, or the Local Bankruptcy Rules for the Northern District of Ohio. In explaining the issues presented, the court is not ruling against the Debtors on these issues. The Debtors will be able to present counter-arguments, case law and evidence on these issues in support of confirmation of their Chapter 13 Plan as filed.

The first problem is a provision in the Chapter 13 Plan itself (not in the "additional terms" or "boiler plate" section) which attempts to make the Plan's 60 month period run from the date of confirmation. [Doc. #84, p. 1]. The provision in issue states: "Debtor's Current Monthly Income exceeds the applicable State median income. Debtor's Applicable Commitment Period is 60 months. Debtor's Plan Length shall be 60 months from the date of entry of the Order Confirming Plan."

A strong majority of courts and bankruptcy treatises hold that the 60 month period runs from the date the first payment is due under Section 1326(a)(1). *See*, Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th Ed., §200.1, at ¶6 & ¶12, & §256.1, at ¶ 6, Sec. Rev. June 9,

17

2004, www.Ch13online.com (quoting *Evans*); 8 Collier on Bankruptcy, ¶1329.07 at 1329-20 (16th ed. 2013); *In re Profit*, 283 B.R. 567, 575 (B.A.P. 9th Cir. 2002)(the 60-month period under § 1329(c) commences on the date the first plan payment is due pursuant to §1326(a)(1)); *In re Cooper*, 2016 WL 14085555 at *2 n.8, 2016 Bankr. LEXIS 1102 at *6 n.8 (Bankr. D. Idaho April 6, 2016)(60 month period calculated as ending in May, 2015 based upon a filing date of April 30, 2010); *In re Schuster*, 2015 WL 9282447 at **3-4, 2015 Bankr. LEXIS 4241 at **9-11 (Bankr. D.D.C. Dec. 18, 2015); *In re Ramsey*, 507 B.R. 736, 739 n.11 (Bankr. D. Kan. 2014)(date on which the first payment was due at the commencement of the case was the starting point for calculating the 5-year maximum duration of a modified chapter 13 plan under §1329(c)); *In re Kirk*, 2011 Bankr. LEXIS 5041 at *10 (Bankr. N.D. Ala. Dec. 21, 2011); *In re Magallanes*, 2010 Bankr. LEXIS 1387 at **13-15 (Bankr. N.D. Ind. May 13, 2010); *In re McGraw*, 2009 Bankr. LEXIS 5593 at **3-5 (Bankr. S.D. Ala. July 31, 2009); *Hamilton v. Appolon*, 2009 WL 2171097 at *5, 2009 Bankr. LEXIS 4626 at **15-16 (Bankr. D. Mass. July 15, 2009); *In re Musselman*, 341 B.R. 652 (Bankr. N.D. Ind. 2005)(Plan commencing 60 month payment period from the date of confirmation could not be confirmed); *Baxter v. Evans (In re Evans)*, 183 B.R. 331 (Bankr. S.D. Ga. 1995)(when calculating the remaining duration of a modified chapter 13 plan under §1329(c), the final payment must be due no later than 60 months from when the debtor was required to commence plan payments under 11 U.S.C. § 1326(a)(1)); *contra, West v. Costen*, 826 F.2d 1376 (4th Cir. 1987)[12].

Unless the court orders otherwise, §1326(a)(1) requires Chapter 13 debtors to make their first payment, "not later than 30 days after the date of filing of the plan or the order for relief, which ever is earlier, . . ." Section 301, which is made applicable to Chapter 13 cases under Section 103(a), provides that a case is commenced with the bankruptcy court by the filing of a petition. *See*, 11

---

[12]/ While *West v. Costen* remains good law in the Fourth Circuit, the majority of courts not required to follow *West* have rejected its holding in more recent decisions. It should be noted that *West v. Costen* was decided in 1987, well before a number of statutory changes adding new provisions relating to Chapter 13 time limits. These changes included the five year "over the median" commitment period in § 1322(d) (retaining the same five year limitation, but now limiting "payments" over "a period that is longer than five years"), the provisions of § 1322(a)(4), and the requirement of § 1325(b)(1)(B). It is difficult to reconcile these statutory provisions with a 60 month period that does not commence until plan confirmation. Instead, these provisions appear to require measurement from the date when the first payment is due under § 1326(a)(1). If there is any argument for measuring from the date of confirmation, it is only in connection with plan modification, where § 1329(c) uses the term "confirmed plan" - but even that is undermined by the reference to the applicable commitment period under § 1325(b)(1)(B). Sections 1322(a)(4) and § 1325(b)(1)(B) speak in terms of "the date that the first payment is due under the plan". There is no reference to a "confirmed" plan in those provisions. Thus, the prohibition in § 1322(d), which now includes the word "payments", should be read as running from the date the first payment is due under § 1326(a)(1).

18

U.S.C. § 301(a). Under Section 301(b): "The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter." Thus, the "earlier" of the order for relief and the filing of a plan will be the order of relief, which takes effect upon the filing of the petition.

Measured from the date thirty days after filing, when the first payment was due under Section 1326(a)(1), Debtors' proposed Chapter 13 Plan would run more than 70 months. A 70+ month Plan would be contrary to Section 1322(d)(1) statutory prohibition: "the plan may not provide for payments over a period that is longer than 5 years."

While the Debtors were willing, at the July 26, 2016 confirmation hearing, to consider changing this provision, there was no agreement reached to remove it. At this time, it remains part of Debtors' proposed Chapter 13 Plan.

The second potential *Espinosa* problem is a provision in the additional terms section (the "boilerplate" provision) that Debtors added for the first time in their July 14, 2016 Chapter 13 Plan. [Doc. #84, p. 11, §X.]. This provision purports to set deadlines for certain actions in the event of conversion to a Chapter 7. This provision appears to be inherently improper after the Supreme Court's decision in *Harris v. Viegelahn*, 135 S.Ct. 1829, 191 L.Ed.2d 783 (2015), holding that: "When a debtor exercises his statutory right to convert, the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway. §103(i)('Chapter 13 . . . applies only in a case under [that] chapter.'). Harris having converted the case, the Chapter 13 plan was no longer "bind[ing]." §1327(a)." *Harris v. Viegelahn*, 135 S.Ct, at 1838, 191 L.Ed.2d at 793. Under *Harris v. Viegelahn*, the Section X provision cannot control what happens after conversion, because the Supreme Court has specifically held that upon conversion to a proceeding under Chapter 7, the "binding" power of the Chapter 13 Plan terminates.

While the court is not deciding at this time whether including provisions that attempt to restate the Bankruptcy Code or Rules gives rise to an obligation to deny confirmation of the Plan under *Espinosa*, courts have made it clear that including such provisions is strongly disfavored. *In re Rose*, 2015 WL 151221 at *3, 2015 Bankr. LEXIS 176 at *8 (Bankr. W.D. Mich. Jan. 12, 2015)("As a general proposition, this court agrees that additional provisions should not restate settled law, reiterate rights under the Bankruptcy Code and applicable rules, . . ."); *In re Corbin*, 2013 Bankr. LEXIS 1574 at *3 (Bankr. S.D. Ohio April 16, 2013)("The restating or explaining of

19

provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure in Chapter 13 plans is generally inappropriate."); *In re Frazee*, 2011 WL 10621665, 2011 Bankr. LEXIS 3695 (Bankr. S.D. Ohio Sept. 27, 2011)(additional language in Chapter 13 plan which restates Bankruptcy Code stricken); *In re Poff*, 2012 WL 7991472, 2012 Bankr. LEXIS 1189 (Bankr. S.D. Ohio March 16, 2012)(plan provisions restating the law stricken); *In re Knecht*, 2012 Bankr. LEXIS 20 at *8 (Bankr. S.D. Ohio Jan. 6, 2012)("debtor's additional provision in this paragraph constitutes on unnecessary restatement of a provision of Bankruptcy Code, and should be omitted from future plan filings."); *In re Solitro*, 382 B.R. 150, 152 (Bankr. D. Mass. 2008)("Even if additional provisions do nothing more than restate parties' rights under the law, including [the] Bankruptcy Code and Rules, they thwart the goal of providing individuals with a streamlined method for reorganizing their debts.").

The third possible *Espinosa* problem is another provision in the additional terms section that appears to seek to allow Debtors to hire counsel post-petition, and require the Trustee to pay the attorney up to $400 without a fee application being filed. [Doc. #84, p. 8, §C.]. This provision states, in pertinent part: "The Professional may seek compensation in an amount not to exceed $400.00 by filing a Proof of Claim designating as an Administrative Expense without further notice, hearing or Order of Court." This provision, if applicable[13], would appear to be contrary to Bankruptcy Rule 2016(a), which requires an entity seeking compensation for services to file a fee application. It also appears to be contrary to Local Bankruptcy Rule 2016-1, which states: "Applications for compensation shall be prepared in accordance with the Court's Guidelines for Compensation and Expense Reimbursement of Professionals then in force." The compensation Guidelines apply to professionals generally, including lawyers. *See*, https://www.ohnb.uscourts.gov/guidelines-compensation-and-expense-reimbursement-professionals

The fourth provision that raises *Espinosa* concerns is the provision purporting to govern procedures when the stay is lifted. [Doc. #84, p. 11, §V.]. In bold type, the last sentence in this provision states: "Creditors must file any amendment to a timely filed proof of claim for any balance remaining after liquidation of the collateral no more than 90 days from the date that the collateral is liquidated." This appears to be contrary to the requirements of Local Bankruptcy Rule 4001-1(a), which states: "Parties seeking relief from stay must use the local forms." The local form for the

---

[13]/ It is not clear if the provision would be applicable if the Debtors were to retain counsel post-petition because the box for intending to retain counsel was not checked in Section II(B)(3) of the proposed Plan. It is a provision that would, at the very least, need to be explained.

Order[14] granting relief from stay in a Chapter 13 case provides that: "Should Movant seek to file any unsecured deficiency claim, Movant shall do so no later than 90 days after this Order is entered. If the Collateral has not been liquidated, the deficiency claim is to be estimated." The requirement of 90 days from the date of the entry of the Order is a date that all parties can determine. It is more difficult to determine when a secured creditor has actually liquidated collateral. Moreover, measuring from the date of the Order is a shorter time frame for the filing of a claim. But, regardless of the merits of the respective approaches, it appears that the proposed Plan is seeking to deviate from a requirement imposed by Local Bankruptcy Rule 4001-1(a).

For all of these reasons, Debtors' proposed Chapter 13 Plan did not appear to be confirmable at the July 26, 2016 Hearing. The problems described above are all based upon the issues arising under Section 1325(a), which apply regardless of whether or not there is a filed objection. This is in contrast to the language of Section 1325(b), which specifically states that the listed prohibitions are triggered by the filing of an objection.

Because the Plan did not appear to be confirmable, because of both legal issues and evidentiary issues, the court set the matter for an evidentiary hearing.[15] While Chanda Lundy's pleadings make it clear that she disagrees with the court allowing the Chapter 13 Trustee to file written objections, the court had the discretion to do so under existing case law. Collier on Bankruptcy also states that: "Where the confirmation hearing is adjourned, an objection filed prior to the adjourned hearing may be considered by the court." 9 Collier on Bankruptcy, ¶ 3015.02 at 3015.03 n. 3 (16th ed. 2013); *see also*, *In re Ryan*, 160 B.R. 494, 496-497 (Bankr. N.D.N.Y. 1993); *In re Arendarczyk*, 2014 WL 6629770, 2014 Bankr. LEXIS 4790 (Bankr. S.D. Ga. Nov. 21, 2014).

## 2. The July 26, 2016 Confirmation Hearing Was Not An Evidentiary Hearing.

It is the court's practice to set a number of Chapter 13 cases at the same date and time on

---

[14]/ *See*, https://www.ohnb.uscourts.gov/sites/default/files/local-bankruptcy-forms/2010-order-relief-stay-chapter-11-and-13-cases.pdf

[15]/ The hearings on the court's regular confirmation docket are not "evidentiary hearings". While a Chapter 13 Plan can be confirmed, confirmation is generally not denied on evidentiary grounds. Rather, an evidentiary hearing on confirmation is set, as was done in this case. This local practice is long standing, and allows attorneys and participants to appear by telephone, without fear of an adverse ruling based upon a failure to present evidence. This is important because of the size of the Western Division and the number of participating parties who do not live in the Division.

21

confirmation and dismissal issues. On July 26, 2016, there were approximately 19 cases scheduled for hearing on those issues from 9:30 a.m. to 11 a.m. The Lundys' case was third on the docket. Thus, there were 16 more hearings that were to follow the Lundys' hearing. An additional docket of miscellaneous Chapter 13 hearings was to start at 11 a.m.

The court's records reflect that the Lundy hearing took 23 minutes. That is more than twice as long as any other scheduled confirmation hearing. Chanda Lundy's arguments were based on the assumption that the Lundys' Chapter 13 Plan met the requirements of Section 1325(a). Based upon the arguments presented, a great deal more time was needed to resolve the issues related to the Plan. It is the court's standard practice when an impasse is reached on Chapter 13 confirmation to set the matter for an evidentiary hearing, as was done here.

Even assuming that an objective observer would view the facts as Chanda Lundy described them in her pleadings - that the court was rude and cut her off - that cannot serve as a basis for disqualification under 28 U.S.C. Section 455(a).

The Supreme Court specifically addressed this issue in *Liteky*. A court has discretion to control its own docket without those ordinary actions forming a basis for disqualification. "A judge's ordinary efforts at courtroom administration -- even a stern and short-tempered judge's ordinary efforts at courtroom administration -- remain immune." *Liteky v. United States*, 510 U.S. 540, 556 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474, 491 (1994).

The Debtors were entitled to more time to work through the concerns the court had about whether their Plan met the legal requirements for confirmation under Section 1325(a). But they were not entitled to unlimited amount of time on July 26, 2016, while other cases that were clearly compliant, waited. At the point where the arguments that were being made by the parties became unhelpful to the court, the matter was set for an Evidentiary Hearing, with more time allotted to address the issues the Debtors and the Trustee wanted to argue. Again, under *Liteky*, that decision cannot form the basis for disqualification.

### 3. The Steps That The Court Took After Former Chapter 13 Trustee John P. Gustafson Took The Bench Were Reasonable And Sufficient.

Certain steps were taken after the death of the Hon. Richard L. Speer in anticipation of the appointment of a new bankruptcy judge for the Western Division of the Northern District of Ohio. A separate "Successor Judge" docket was established by the Hon. Mary Ann Whipple, which

22

included all of Judge Speer's cases, and the clerk maintained a random two docket draw. During this period of approximately one year, all bankruptcy cases in the Western Division were handled by Judge Whipple.

Shortly after the appointment of John P. Gustafson on April 8, 2014 as a bankruptcy judge for the Western Division, almost all of the pending cases on the "Successor Judge Docket" were transferred from Judge Whipple to Judge Gustafson, except the Chapter 13 cases. All of the Chapter 13 cases pending at the time of my appointment were transferred from the Successor Judge Docket to Judge Whipple's docket. New Chapter 13 cases then continued to be randomly assigned to either Judge Whipple, or the Successor Judge Docket.

Analogizing to the more common situation involving judicial law clerks appearing before the judge they clerked for, it was determined that there should be a one year "period of repose" where Elizabeth Vaughan would not appear before Judge Gustafson. This was based upon her having served as Staff Attorney. The one year period is the customary period in the Western Division during which former law clerks do not appear before the judge they worked for (although the hiring law firm is not excluded from appearing before the judge). Because Elizabeth Vaughan did not hire a new Staff Attorney, that meant that all Chapter 13 cases - both those assigned to Judge Whipple and those assigned to the Successor Judge Docket - were heard by Judge Whipple.

The case law applicable to former law clerks makes it clear that the mere fact that an attorney once served as a clerk for a judge is not sufficient to make a reasonable person question the judge's impartiality. *United States v. O'Brien*, 2014 WL 535663 at \*19, 2014 U.S. Dist. LEXIS 14703 at \*54 (D. Mass. Feb. 6, 2014). As a result, recusal has not been required whenever a former law clerk appears before a judge. *See*, *United States v. Hollister*, 746 F.2d 420, 425 (8th Cir. 1984)(trial judge not required to recuse when prosecutor was former law clerk who finished her clerkship three months prior to trial). In a case similar to the matter before the court, a pro se debtor sought to have a bankruptcy judge recuse himself because the Chapter 7 bankruptcy trustee had previously served as the judge's law clerk. The bankruptcy judge denied the motion, and that decision was affirmed on appeal to the district court. *See*, *Wisdom v. Gugino (In re Wisdom)*, 2015 WL 2371489, 2015 U.S. Dist. LEXIS 65990 (D. Idaho May 18, 2015).

After the one year period of repose ended, all of the Chapter 13 cases on the Successor Judge Docket, which would be only cases filed after April 8, 2014, were transferred to Judge Gustafson.

The "draw" for new cases was adjusted, and except for one county in the district, all cases which were not refilings by debtors who previously had cases assigned to Judge Whipple, were automatically assigned to Judge Gustafson.

New Chapter 13 cases filed by debtors who had previous cases where John P. Gustafson had previously served as the Chapter 13 trustee are individually reviewed for conflicts - specifically any memory of information from the previous case that could affect judicial decision making.

It has now been more than two years since John P. Gustafson was a Chapter 13 Trustee. John P. Gustafson was never the Chapter 13 Trustee in any bankruptcy case filed by either of the Debtors. Accordingly, the court finds that based upon the steps that were taken, a reasonable person with knowledge of all the facts would not conclude that the judge's impartiality might reasonably be questioned based on either his previous status as the Standing Chapter 13 Trustee, or because the present Standing Chapter 13 Trustee was previously the Chapter 13 Staff Attorney.

### 4. The Debtors' Right To Appeal After *Bullard*.

Chanda Lundy objects to the court having referenced her right to appeal, but not issuing an order that could be appealed. The comment regarding appellate rights was made in response to Chanda Lundy's arguments regarding the court's decision refusing to confirm the Chapter 13 Plan as filed, and in allowing the Chapter 13 Trustee to file objections to the Plan prior to the Evidentiary Hearing which the court scheduled at the conclusion of the July 26, 2016 Hearing.

The ability to appeal a trial court ruling is an important right, but the scope of that right is limited by both legal principles and the Federal Rules of Bankruptcy Procedure. The Bankruptcy Rules provide a short fourteen-day window for filing an appeal. *See*, Fed.R.Bankr.P. 8002(a). A recent Supreme Court decision outlines the legal requirements for filing an appeal relating to confirmation of a proposed plan in a Chapter 13 case.

In order to have a right to appeal, there must be a "final order". The Supreme Court has held that in a Chapter 13 case: "an order resolving that matter by overruling the objection and confirming the plan is final." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1694, 191 L. Ed. 2d 621, 628-629 (2015). In contrast, the Supreme Court held that denial of confirmation of a Chapter 13 Plan is not a final order. "A decision that does not resolve the entire plan consideration process—denial—is therefore not appealable." *Bullard*, 135 S.Ct. at 1694, 191 L.Ed.2d at 629. Instead, under *Bullard*,

24

denial of Plan confirmation is an "interlocutory order" which is not appealable as a matter of right.

The exception to this rule is when the denial of Plan confirmation is either accompanied by, or followed by, dismissal "because only plan confirmation—or case dismissal—alters the status quo and fixes the rights and obligations of the parties." *Bullard*, 135 S.Ct. at 1692, 191 L.Ed.2d at 627.

The *Bullard* court discusses another way to appeal denial of confirmation of a Chapter 13 Plan when there is an important legal issue to be addressed:

> Sometimes, of course, a question will be important enough that it should be addressed immediately. Bullard's case could well fit the bill: The confirmability of his hybrid plan presented a pure question of law that had divided bankruptcy courts in the First Circuit and would make a substantial financial difference to the parties. But there are several mechanisms for interlocutory review to address such cases. First, a district court or BAP can (as the BAP did in this case) grant leave to hear such an appeal. 28 U. S. C. §158(a)(3). A debtor who appeals to the district court and loses there can seek certification to the court of appeals under the general interlocutory appeals statute, §1292(b). *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).
>
> Another interlocutory mechanism is provided in §158(d)(2). That provision allows a bankruptcy court, district court, BAP, or the parties acting jointly to certify a bankruptcy court's order to the court of appeals, which then has discretion to hear the matter. Unlike §1292(b), which permits certification only when three enumerated factors suggesting importance are all present, §158(d)(2) permits certification when any one of several such factors exists, a distinction that allows a broader range of interlocutory decisions to make their way to the courts of appeals. While discretionary review mechanisms such as these "do not provide relief in every case, they serve as useful safety valves for promptly correcting serious errors" and addressing important legal questions. *Mohawk Industries*, 558 U. S., at 111, 130 S. Ct. 599, 175 L. Ed. 2d 458 (internal quotation marks and brackets omitted).

*Bullard*, 135 S.Ct. at 1695-1696, 191 L.Ed.2d at 630.

At this time, the court has not denied confirmation of the Debtors' Chapter 13 Plan. And, even if the court had entered an order denying confirmation, under *Bullard* that order would not have been appealable as a matter of right.. Thus, all of the rulings that this court has made on the confirmation issues that have come before the court - including refusing to confirm the Debtors' Plan at the July 26, 2016 Hearing, and allowing the Chapter 13 Trustee to file objections - will be issues preserved for the Debtors to appeal and have reviewed by a higher court, either when there is a final order, or based upon an interim order denying confirmation, if one is issued.

**5.      Other Miscellaneous Claims Relating To Bias.**

        **A.      The claim that there were discussions, outside of the Hearings attended by Chanda Lundy, between the court and the Trustee about the Lundy's case.**

No evidence was offered to support this claim, and no such discussions ever occurred about the Lundy case.

        **B.      The assertion that the court purposely delayed signing orders regarding claims objections, and was "holding them hostage".**

Both bankruptcy judges in the Western Division sign objection to claims orders, and orders regarding relief from stay, after the scheduled hearings, not immediately after the noticed objection period passes.  The orders on Debtors' claims objections were signed in the ordinary course of the court's workflow.

        **C.      Claims of bias based upon race, gender and *pro se* status.**

The factual underpinnings of these claims appear to be the assertion that this court does not follow the Code, and therefore there must be bias.  The legal discussions above explain why the court believes, based upon established precedents from other courts, that it has followed the requirements of the Bankruptcy Code and Rules, with one exception.

The exception is this court's failure to grant the Chapter 13 Trustee's Motion to Dismiss Debtors' case, when Debtors' tax returns had not been timely filed.  Dismissal under the Code was, as explained above, mandatory under 11 U.S.C. §§ 1307(e) and 1308(a).  The court did not comply with the Code in failing to grant the Motion, and there is no case law support for the court failing to grant the Motion.

However, even though there was no statutory basis for the court's action, the failure to dismiss Debtors' case on the Trustee's Motion does not appear to support an inference of bias, on any basis, against Chanda Lundy or her co-Debtor, Claude Lundy.

        **D.      Claims of bias based upon identification with, or affection for, local practices.**

26

The local practices of the Northern District of Ohio in dealing with Chapter 13 cases arise from many sources, including long-serving bankruptcy judges, and a Chapter 13 Trustee, Anthony B. DiSalle, who served for almost 40 years.

Even if local practices were, in whole or in part, something that John P. Gustafson participated in formulating as the Chapter 13 Trustee, "a reasonable person with knowledge of all the facts" would be no more likely to conclude that the judge's impartiality might reasonably be questioned on that issue than a judge who is being asked to interpret his or her prior orders, or administrative orders, or to hear a matter on remand from an appellate court. Thus, Chanda Lundy's claim of disqualifying bias on this basis will be denied.

### 6.    Potential Grounds For Recusal That May Be Raised In The Future.

Section 455(b)(1) states that a judge shall disqualify him or herself: "(1) Where he [or she] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . .".

The last element of § 455(b)(1) appears to present a potential problem in the future, based upon the Chapter 13 Trustee's Objection [Doc. #128] and the list of factors the Sixth Circuit has listed for bankruptcy courts to look at in determining whether a Chapter 13 Plan is filed in "good faith".

The Trustee's Objection includes the allegation that the "boiler plate" provisions of Debtors' Plan would constitute an "administrative burden" to the Chapter 13 Office. [Doc. #128, p.2].  The Sixth Circuit Court of Appeals has listed "(11) the burden which administration would place on the trustee; . . . " as a factor bankruptcy courts are to consider in determining whether a Chapter 13 Plan is filed in good faith.  *See*, *Alt v. United States (In re Alt)*, 305 F.3d 413, 419 (6th Cir. 2002).

Arguably, John P. Gustafson has extra-judicial knowledge of the internal procedures of the Chapter 13 Trustee's Office[16], and that knowledge may be sufficient for recusal[17] under § 455(b)(1).

___

[16]/ This is different from knowledge of "local practices" in bankruptcy, which are commonly known by the members of the bar who regularly practice in the Western Division. *Cf.*, *In re Martinez-Catala*, 129 F.3d 213, 221 (1st Cir. 1997)("any lawyer who studies a judge's past rulings can make an informed guess as to how the judge is likely to approach an issue.").

[17]/ There is case law which holds that "technical knowledge" that is acquired from an extra-judicial source is not disqualifying. *See*, *United States v. Bonds*, 18 F.3d 1327 (6th Cir. 1994); *Clarkco Landfill Co. v. Clark County Solid Waste Mgmt. Dist.*, 20 F.Supp.2d 1185, 1191 (S.D. Ohio 1998)("even a substantial body of technical knowledge about a subject is not disqualifying.").

To the extent that the issue of "administrative burden" becomes one that is necessary for the court to weigh in making a determination as to whether the proposed Chapter 13 Plan (or a future Chapter 13 Plan) can be confirmed, the court would consider whether recusal was appropriate under 28 U.S.C. § 455(b)(1). At this time, the primary issues, as outlined above, appear to be whether the present proposed Plan is potentially confirmable, or unconfirmable based upon the legal and evidentiary issues set forth above. If those issues are resolved in the Debtors favor, and the issue of the "administrative burden" imposed by the Plan becomes a dispositive issue that needs to be addressed, any party may raise the issue of recusal based upon 28 U.S.C. § 455(b)(1) if the court fails to do so.

For all of the reasons set forth above, it is

**ORDERED** that Debtor Chanda Lundy's Motion To Disqualify Judge John P. Gustafson from Future Proceedings Under 28 U.S.C. § 455 [Doc. # 130], and the Declaration Pursuant to 28 U.S.C. § 1746 of Chanda M. Lundy [Doc. # 136], are Denied.

It is **FURTHER ORDERED** that Debtors' most recently filed Chapter 13 Plan [Doc. # 84] is set for an Evidentiary Hearing on Confirmation on November 22, 2016 at 1:30 p.m.