**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: September 29 2017

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 15-32271 |
| | ) | |
| Claude Darus Lundy and | ) | Chapter 13 |
| Chanda Marie Lundy, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION

This opinion addresses two related motions filed by Debtor Chanda Marie Lundy ("Debtor") in this joint Chapter 13 case. They are her (1) "Motion Pursuant [to] Rule 9023 of the Code for the Court to Amend the Order Dismissing to Clarify Judge's Court Order with Regard to the Debtors Refund" ("Motion to Amend Dismissal Order") [Doc. # 154] and (2) "Motion to Disgorge Trustee's Fee and Objection to the Chapter 13 Standing Trustee's Final Report and Account" ("Motion to Disgorge Fee") [Doc. # 161].

This case was dismissed before the court confirmed a Chapter 13 plan. The motions raise two procedural questions stemming from that fact. Should the dismissal order be amended to remove the court's authorization to the standing Chapter 13 trustee to retain her percentage fee fixed and collected under 28 U.S.C. § 586(e) from the plan payments made before dismissal? If so, should the fee retained by the trustee from those plan payments under the authority she was granted by the dismissal order be disgorged? The answers to these two procedural questions in turn depend on the same basic legal issue. In a case where no plan was confirmed, do 11 U.S.C. § 1326(a)(2) or 28 U.S.C. § 586(e) authorize retention of a standing

Chapter 13 trustee's statutory percentage fee collected from pre-confirmation plan payments before they are returned to a debtor?

The two motions were pending when the case was transferred after the judge originally assigned to hear it recused himself from further proceedings. The newly assigned judge held a status hearing on the motions. The purpose of the status hearing was to aid the court in deciding whether there are any relevant facts that require an evidentiary hearing to determine. In setting the status hearing, the court perceived two relevant facts needed to decide the motions that were not apparent from the then-existing case docket and record. They are (1) whether Debtor (as opposed to her co-Debtor, who is not a party to the two motions) was a payor of funds from which the trustee's fee was collected, such that she has standing to seek the relief she is asking for; and (2) the Chapter 13 trustee's set fee percentage under 28 U.S.C. § 586(e)(1)(B).

The standing Chapter 13 trustee, Elizabeth Vaughan ("Trustee"), appeared at the status hearing in person, as did an attorney for creditor United States of America Internal Revenue Service. An attorney for the Office of the United States Trustee for Region 9 appeared by telephone. Debtor, who is representing herself in this case, also appeared at the status hearing in person.

When questioned at the status hearing about evidence of the payor of the funds and her standing, Debtor stated that "I filed an affidavit," referring to her affidavit filed at Docket No. 207, and that she otherwise relies on the arguments and case law included in her Motion to Amend Dismissal Order and Motion to Disgorge Fee and on the court record. The court stated that it would construe her affidavit as her evidence of standing.[1]

The Trustee stated that she would file an affidavit setting forth how her fee was calculated, including the applicable fee percentage under 28 U.S.C. § 586(e)(1)(B), as well as her records regarding copies of the deposits of plan payments made in this case. Both the Trustee and Debtor agreed that no other facts are necessary to decide the motions and an evidentiary hearing is not necessary. The court granted the Trustee fourteen days leave to file her affidavit, after which the court would take the motions under advisement.

The Trustee's affidavit [Doc. # 241] having been timely filed, the court now addresses Debtor's

---

[1] Debtor had also previously filed on January 11, 2017, a document captioned "Declaration of Facts in Preparation for a Motion for the Trustee to Disgorge the Fees Retained and in Anticipation of Possibly Having to File Another Motion to Disqualify the Judge as it Relates to the Trustee's Retention of Funds that are to be Returned to the Debtor Pursuant to Section 1326(a)(2) of the Federal Bankruptcy Code" ("Declaration"). [Doc. # 157]. After the transfer of the case, the court also set the Declaration for status hearing, along with the two pending motions, in order to learn from Debtor what she intended the docket purpose of this document to be, as it includes no formal request for relief. The court held the status hearing on June 20, 2017, after which it entered an order striking this document from further consideration as part of the court record. [Doc. # 225].

standing to seek the relief that she has requested and the legal issue raised by both her Motion to Amend Dismissal Order and her Motion to Disgorge Fee.

## BACKGROUND

Representing themselves, Debtors filed a bare bones joint Chapter 13 petition on July 10, 2015. They filed their bankruptcy schedules and a proposed Chapter 13 plan on July 27, 2015, and proposed amended plans on October 2, 2015, and June 14, 2016.[2] None were ever confirmed.

The Trustee filed a motion to dismiss the case based in part on Debtors' failure to file income tax returns. The court conducted a hearing on the Trustee's motion to dismiss, at which Debtor Chanda Marie Lundy ("Debtor"), with the court's permission, appeared by telephone. At the hearing, Debtor stated that she did not oppose dismissal based on the failure to file timely tax returns and that she wanted all of the plan payments paid to the Trustee to be refunded to her. The court granted the Trustee's motion on December 22, 2016, and entered an order dismissing the case and requiring the Trustee to "refund to the Debtor(s) any funds on hand less statutory fees." [Doc. # 152].

The Trustee filed her Final Report and Account ("Report") on February 6, 2017. [Doc. # 160]; *see* 11 U.S.C. §§ 1302(b)(1), 704(a)(9). The Report states that Debtors made payments under their proposed plan in the total amount of $10,446.97. [*Id.*]. Of that amount, $600.00 was remitted by co-Debtor Claude D. Lundy, $7,631.97 was remitted pursuant to cashier's checks purchased by Debtor or pursuant to a checking account or a joint checking account in which Debtor has an interest and $2,215.00 was remitted pursuant to cashier's checks purchased by the Chanda M Lundy LLC ("the LLC").[3] [Doc. # 241, ¶¶ 3-4 and attached Exs. A & B]. The Report shows that $920.45 was disbursed as administration expenses for "Trustee Expenses and Compensation" and that the balance of $9,526.52 was refunded to Debtors. [Doc. # 160]. The $920.45 retained as the Trustee's "Expenses and Compensation" represents her percentage fee established by the Office of the United States Trustee. [Doc. # 241, ¶¶ 3, 5 and attached Ex. A]. The Trustee's percentage fee fluctuated between 4.8% and 10% of payments received during the course of this case. [*Id.* ¶¶ 3, 6 and attached Ex. A].

Debtor Chanda Marie Lundy, only, filed a Motion to Amend Dismissal Order and Motion to

---

[2] Debtors also filed an amended plan on January 19, 2016, that did not include a certificate of service and that was stricken from the court record after Debtors failed to respond to the Clerk's Notice of Filing Deficiency and the court's Order to Show Cause as to why it should not be stricken for failure to correct the deficiency. [*See* Doc. # 69].

[3] The LLC is not included in Debtors' bankruptcy schedules. The record is otherwise silent regarding the LLC.

3

Disgorge Fee.[4] Debtor's Motion To Amend Dismissal Order cites Rule 9023 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 59 of the Federal Rules of Civil Procedure. The court thus construes the Motion to Amend Dismissal Order as a motion for reconsideration brought under Rule 59(e) of the Federal Rules of Civil Procedure. *See Howard v. United States,* 533 F.3d 472, 475 (6th Cir. 2008) (stating "Rule 59(e) allows for reconsideration"). The time limit for filing a motion to alter or amend judgment under Rule 59(e) is 28 days after entry of the judgment at issue. Her Motion to Amend Dismissal Order was timely filed within that period.

While Debtor's Motion to Disgorge Fee was not filed within 28 days after entry of the Dismissal Order, it objects and was filed in response to the Report, which was filed on February 6, 2017. Under Rule 5009(a) of the Federal Rules of Bankruptcy Procedure, the United States Trustee or other party in interest has 30 days to object to a Chapter 13 trustee's final report and account, absent which the estate shall be considered fully administered. Debtor's Motion to Disgorge Fee was timely filed on the thirtieth day after the Trustee filed her Report. The court thus construes her Motion to Disgorge Fees as a timely objection to the Report under Rule 5009(a).

## LAW AND ANALYSIS

**I. Standing**

Standing is "the threshold question in every federal case." *Warth v. Seldin,* 422 U.S. 490, 498 (1975). "The Supreme Court has stated that the standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of concerned bystanders.'" *Coal Operators and Associates, Inc. v. Babbitt,* 291 F.3d 912, 915-16 (6th Cir. 2002) (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 473 (1982)).

To satisfy the standing requirement set forth in Article III of the United States Constitution, a plaintiff must have suffered some actual or threatened injury due to the alleged conduct of the defendant; the injury must be fairly traceable to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury. *See Spokeo, Inc.,* –U.S.–, 136 S.Ct. 1540, 1547 (2016)*; Valley Forge*, 454 U.S. at 472. Injury in fact is the "first and foremost" of Article III standing's three elements. *Spokeo, Inc.*, 136 S.Ct. at 1547 (quoting *Steel, Co. v. Citizens for Better Environment*, 523

---

[4] With the exception of a motion filed at Document # 243 on July 5, 2017, all of the many post-dismissal motions filed in this case have been signed by Debtor Chanda Marie Lundy, only.

U.S. 83, 103 (1998)). In addition, "as a prudential matter, [the party invoking the court's jurisdiction] must be a proper proponent." *Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 576 (6th Cir. 1991). That party must thus "assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499.

The need arises in this case to address specifically constitutional and prudential standing because this is a joint case, but only Debtor Chanda Marie Lundy filed the Motion to Amend Dismissal Order and Motion to Disgorge Fee. Indeed, she has pointedly emphasized to the court that her co-Debtor Claude Darus Lundy is *not* a party to the two motions. [*See* Doc. # 184, pp. 2-3]. And since they are non-attorneys representing themselves, Debtor Chanda Marie Lundy cannot represent just co-Debtor Claude Darus Lundy's interests or the LLC's interests. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel...."); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir.1998) ("[B]ecause pro se means to appear for one's self, a person [i.e., a non-attorney] may not appear on another person's behalf in the other's cause"); *Crawford v. Shamrock Coal Co.*, 861 F.2d 720 (Table) (6th Cir. 1988) ("An individual who is not an attorney cannot represent his or her spouse."); *In re ICLNDS Notes Acquisition*, LLC, 259 B.R. 289, 294 (Bankr. N.D. Ohio 2001) (finding that an LLC may appear in court only through an attorney and citing *Rowland v. California Men's Colony*, 506 U.S. 194, 201-202 (1993) (stating that "[i]t has been the law for the better part of two centuries. . .that a corporation may appear in the federal courts only through licensed counsel" and that "the rationale for that rule applies equally to all artificial entities")). In order to have standing to pursue the relief Debtor seeks, she must show that she made or at least had an interest in plan payments and has a stake in the outcome of her motions beyond just her statutory status as a co-debtor, which affords her prudential standing. Only then can the court find that she has suffered some injury that may be redressed by the relief sought.

The only evidence Debtor provided in this regard is her affidavit, which states only that she is her "husband's wife" and that they both worked during the pendency of the case. [Doc. # 207, p. 2]. The Trustee, however, provided evidence of the source of the plan payments, which shows that she received payments totaling $10,446.97 under Debtors' proposed plans and that she retained $920.45, accurately calculated based upon her percentage fee as established by the Office of the United States Trustee applicable at the time the payments were received. Of the total plan payments made in this case, the evidence shows that $685.90 of the funds at issue retained by the Trustee is based upon payments attributed directly to Debtor and the applicable fee percentage at the time the Trustee received those payments. The court

15-32271-maw    Doc 252    FILED 09/29/17    ENTERED 09/29/17 11:38:13    Page 5 of 15

therefore finds that Debtor has both constitutional and prudential standing to pursue both her Motion to Amend Dismissal Order and her Motion to Disgorge Fee.

## II. Standing Chapter 13 Trustee Is Not Entitled to a Statutory Fee in a Case Dismissed Before Confirmation of a Debtor's Plan

The percentage fee on payments made under plans is the only source of revenue for the Office of the Standing Trustee. [Doc. # 241, ¶ 7]. The *Handbook for Chapter 13 Standing Trustees* ("*Handbook*") issued by the Executive Office for United States Trustees of the United States Department of Justice, which appoints and supervises standing trustees, states that the standing trustee is authorized to collect the percentage fee upon receipt of a payment.[5] *Handbook* at pp. 2-3 to 2-4. It further provides that "[i[f the plan is dismissed or converted prior to confirmation, the standing trustee must reverse payment of the percentage fee that had been collected upon receipt if there is controlling law in the district requiring such reversal. . . ." *Id.* at 2-4.[6]

There is a fair amount of case law, often conflicting, addressing whether secured creditors or creditors trying to levy on funds in a Chapter 13 trustee's possession at pre-confirmation dismissal are entitled to the money. *Compare In re Inyamah*, 378 B.R. 1183 (Bankr. S.D. Ohio 2007)(creditor's non-wage garnishment served on Chapter 13 trustee not honored) *with In re Shields*, 431 B.R. 446 (Bankr. S.D. Ind. 2010)(undistributed funds in Chapter 13 trustee's possession upon dismissal of Chapter 13 case with no confirmed plan are subject to levy). And there is a fair amount of case law addressing attorneys' fees, *e.g.*, *In re Kirk*, 537 B.R. 856 (Bankr. N.D. Ohio 2015)(Judge Woods); *In re Wheaton*, 547 B.R. 490 (B.A.P. 1st Cir. 2016), and other administrative expenses as a proper deduction from funds being returned to a debtor upon a pre-confirmation dismissal. But the court is aware of no case in this district that has addressed the issue presented in this case and no controlling law in this district that required the Trustee to reverse payment of the percentage fee collected by her in this case. Nor, indeed, is there any case on point issuing from any of the United States Courts of Appeals, let alone any binding authority from the

---

[5] The court takes judicial notice of the contents of the *Handbook*, which is publicly available at https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-13-handbooks-reference-materials. *See* Fed. R. Evid. 201; Fed. R. Bankr. P. 9017.

[6] The United States Trustee has offered no argument with respect to the issues raised in Debtor's Motion to Amend Dismissal Order and Motion to Disgorge Fee.

United States Supreme Court[7] or the United States Court of Appeals for the Sixth Circuit, in which this court is located.

Determining whether a standing Chapter 13 trustee is entitled to a statutory fee in a case dismissed before confirmation of a debtor's Chapter 13 plan requires construction of two statutes,[8] specifically, 28 U.S.C. § 586(e) and 11 U.S.C. § 1326.[9] Among the courts that have addressed the issue, there is disagreement about how these two statutes should be construed. The Trustee relies solely on the construction and analysis in *Nardello v. Balboa (In re Nardello)*, 514 B.R. 105 (D.N.J. 2014), finding that § 586(e) makes collection of the statutory percentage fee mandatory on all payments received, including in cases dismissed before confirmation of a plan. Debtor, on the other hand, cites *Acevedo v. Harrell (In re Acevedo),* 497 B.R. 112 (Bankr. D.N.M. 2013), and *In re Dickens*, 513 B.R. 906 (Bankr. E.D. Ark. 2014), in support of her position that § 1326(a)(2) requires that all payments received by a standing Chapter 13 trustee be returned to the debtor on dismissal of the case if a plan has not been confirmed. For the reasons

---

[7] The United States Supreme Court case *Harris v. Viegelahn*, –U.S.–, 135 S.Ct. 1829 (2015), involves funds in a Chapter 13 trustee's possession at conversion of a case to Chapter 7 and does not apply in this case. *In re Kirk*, 537 B.R. at 859.

[8] A third statute, 11 U.S.C. § 349, generally governs the effect of dismissal of all cases under Title 11 regardless of chapter. Section 349(b)(3) states that, "[u]nless the court orders otherwise," dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3). Neither party has argued application of § 349(b)(3) to the issue of what happens to the Trustee's statutory fee upon the pre-confirmation dismissal of this case.

Some courts have decided that § 349(b)(3) governs what happens to funds that a Chapter 13 trustee holds upon dismissal and that § 1326(a)(2) does not apply in the context of dismissal, except perhaps as "cause" to "order otherwise" in allowing payment of an attorney's fee before the return of funds to a debtor. *E.g., In re Lewis*, 346 B.R. 89, 107 (Bankr. E.D. Pa. 2006). While a debtor's post-petition earnings are property of the estate under Chapter 13, 11 U.S.C. § 1306(a)(2), there is a certain awkwardness in applying § 349(b)(3) where property such as earnings or a cause of action were not vested in anybody before the commencement of the case. *See Lewis,* 346 B.R. at 10; *In re Darden*, 474 B.R. 1, 10 (Bankr. D. Mass. 2012). *But see In re Hamilton*, 493 B.R. 31, 39 (Bankr. M.D. Tenn. 2013)(eschewing any ambiguity in application of § 349(b)(3) to post-petition wages held by a trustee at pre-confirmation dismissal).

Other courts have decided that § 1326(a)(2) governs what happens to funds that a Chapter 13 trustee holds upon a pre-confirmation dismissal, because it is more specific than § 349(b)(3); it directly addresses Chapter 13 cases and what happens to plan payments as property of the estate. *E.g.*, *In re Kirk*, 537 B.R. at 860.

The court need not sort out this particular statutory conundrum, *In re Ward*, 523 B.R. 142, 147 (E.D. Wis. 2014)("courts have landed all over the map in trying to construe these phrases"). The motions come out the same way whether § 349(b)(3) or § 1326(a)(2) controls. Under the *Hamilton* "revesting" analysis, all of the funds on hand must be returned to Debtors both under § 349(b)(3) and under § 1326(a)(2), as the court explains further below with respect to § 1326(a)(2). There are no attorneys' fees or other allowed administrative expenses in this case. And no "cause" for the court to "order otherwise" has been argued such that § 349(b) must be addressed.

[9] All references to § 586 refer to 28 U.S.C. § 586. All references to any other statutory section in this opinion refer to Title 11 of the United States Bankruptcy Code.

7

that follow, the court agrees with Debtor that § 1326(a)(2) requires a Chapter 13 trustee to return to the debtor(s) the payments made under a proposed plan without deducting a statutory trustee's fee when a case is dismissed before confirmation.

When interpreting a federal statute, the starting point is the language of the statute itself. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). "When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989)). However, in the " 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters' ... the intention of the drafters, rather than the strict language, controls." *Ron Pair Enterprises, Inc.*, 489 U.S. at 242–43 (internal citations omitted). Moreover, when the statute's language is not clear, courts may resort to legislative history to ascertain its meaning. *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir.2001). In determining the clarity or ambiguity of statutory language, courts should not read a statute in isolation. "Statutory construction is a 'holistic endeavor.' 'A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.' " *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004) (internal citations omitted); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). With these concepts in mind, the court turns to the two statutes in question.

Section 1326, entitled "Payments", provides in relevant part as follows:

(a) (1)  Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan . . . in the amount –

    (A)  proposed by the plan to the trustee;

. . . .

    (2)  A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee *shall* return any such payments not previously paid out and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

. . . .

  (b) Before or at the time of each payment to creditors under the plan, there shall be paid--

   (1) any unpaid claim of the kind specified in section 507(a)(2) of this title;

   (2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28;

   (3) if a chapter 7 trustee has been allowed compensation due to the conversion or dismissal of the debtor's prior case pursuant to section 707(b), and some portion of that compensation remains unpaid in a case converted to this chapter or in the case dismissed under section 707(b) and refiled under this chapter, the amount of any such unpaid compensation, which shall be paid monthly--

    (A) by prorating such amount over the remaining duration of the plan; and

    (B) by monthly payments. . . .

  (c) Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.

11 U.S.C. § 1326(a), (b) & (c) (emphasis added).

  Section 586(e)(1) requires the Attorney General of the United States, which authority is delegated to the Executive Office of the United States Trustee, to fix a maximum annual compensation for standing trustees in cases under Chapter 12 and Chapter 13 of the Bankruptcy Code and a percentage fee, which cannot exceed ten percent in a Chapter 13 case and which is based on the maximum annual compensation of, and the actual, necessary expenses incurred by, the standing trustee. 28 U.S.C. § 586(e)(1)(A) & (B). Section 586(e)(2) then provides that the standing trustee "*shall* collect such percentage fee from *all* payments received by [the standing trustee] under plans in the cases under chapter 12 or 13 of title 11. . . ." 28 U.S.C. § 586(e)(2) (emphasis added).

  Addressing the question of whether a standing Chapter 13 trustee is entitled to a statutory percentage fee based on plan payments the trustee receives before confirmation has required courts to harmonize § 1326 and § 586(e)(2), in light of § 1326(a)(2)'s mandate that the trustee return payments made under a proposed plan to a debtor if a plan is not confirmed and § 586(e)(2)'s competing mandate that the trustee collect the statutory percentage fee from all payments received by the standing trustee under plans in Chapter 13 cases. *See Acevedo*, 497 B.R. at 122; *In re Dickens*, 513 B.R. at 916; *Nardello*, 514 B.R. at 113. These courts agree that "under plans . . . in cases under chapter 12 or 13" as used in the first sentence of § 586(e)(2) refers to both confirmed and unconfirmed plans; however, they disagree as to the import of the provision that the trustee "shall collect such percentage fee from all payments received" under such plans. *See Acevedo*, 497 B.R. at 122-23 (concluding that the "most harmonious reading of the two statutes is that § 586(e)(2) directs

9

the trustee to collect and hold the percentage fees pending plan confirmation, while § 1326(a)(2) tells the trustee when and how to disburse payments after confirmation or denial of confirmation, including the trustee's percentage fee"); *In re Dickens*, 513 B.R. at 911, 914 (finding that to "collect" a percentage fee means "to 'obtain payment' of it," but concluding that "§ 1326(a) addresses the circumstances under which the trustee must return the collected fee to the debtor"); *Nardello*, 514 B.R. at 113 (finding that § 586 "makes the percentage fee mandatory on all payments received, including cases dismissed before confirmation" and that § 1326(a)(2) does not require that it be returned to the debtor). This court finds persuasive and agrees with the analysis in *Acevedo* and with the ultimate conclusion in both *Acevedo* and *In re Dickens* that a standing Chapter 13 trustee is not entitled to retain statutory fees in a case dismissed before confirmation of a debtor's plan.

The plain language of § 1326 is clear. The court agrees that the "ordinary and natural meaning" of the phrase "payment . . . in the amount . . . proposed by the plan to the trustee" in § 1326(a)(1)(A) includes both the trustee's percentage fee and the amount to be distributed by the trustee to creditors. *See Acevedo* 497 B.R. at 119; *In re Dickens*, 513 B.R. at 913; *Nardello*, 514 B.R. at 112-13; *see also In re Turner*, 168 B.R. 882, 889 (Bankr. W.D. Tex. 1994) ("The payments under the plan must include a component for the trustee's percentage fee, because the trustee is required to deduct this fee from 'payments received.'"(citing 28 U.S.C. § 586(e) and 11 U.S.C. § 1326(b)). What the trustee must do with those payments is set forth in § 1326(a)(2) – the payment, which includes the amount of the trustee's percentage fee, "shall be retained by the trustee until confirmation or denial of confirmation"; if a plan is confirmed, "the trustee shall distribute any such payment in accordance with the plan as soon as is practicable"; and if a plan is not confirmed, "the trustee shall return any such payments. . .to the debtor" after deducting allowed administrative expenses.[10] 11 U.S.C. § 1326(a)(2). The term "payment" in § 1326(a)(2) refers to the payment "made under paragraph (1)(A)," which, again, includes the amount of the trustee's percentage fee. Thus, if a plan is not confirmed, the plain language of § 1326(a)(2) requires by use of the word "shall" that

---

[10] Under § 503(b), administrative expenses include "compensation and reimbursement awarded under section 330(a) of this title," which in turn provides that "subject to section[] 326. . . the court may award to a trustee. .. reasonable compensation for actual, necessary services rendered by the trustee. . .and reimbursement for actual, necessary expenses." 11 U.S.C. §§ 503(b) and 330(a)(1). Section 326(b) then limits the court's authority to allow administrative claims of the standing Chapter 13 trustee. *In re Ward*, 132 B.R. 417, 419 (Bankr. D. Neb. 1991). It provides that "[i]n a case under chapter 12 or 13 of this title, the court may not allow compensation for services or reimbursement of expenses . . . of a standing trustee appointed under section 586(b) of title 28. . . ." 11 U.S.C. § 326(b). Thus, the Trustee cannot and does not contend that her percentage fee is an administrative expense under § 503(b). *See In re Ward*, 132 B.R. at 419 (Bankr. D. Neb. 1991) (stating that "[t]he only compensation that a standing trustee may receive is the percentage fee provided by 28 U.S.C. § 586(e)" and that § 326(b) "limits the court's authority to allow administrative claims of . . . the standing Chapter 13 trustee").

10

a standing Chapter 13 trustee return the payments that she has received to the debtor, including any amount representing her percentage fee.

Section 1326(b) provides for payment of three types of claims or expenses: (1) unpaid claims of the kind specified in § 507(a)(2), which in turn refers to administrative expenses allowed under § 503(b); (2) the Chapter 13 trustee's percentage fee; and (3) in a case converted from Chapter 7 or dismissed under § 707(b) and refiled under Chapter 13, the amount of any unpaid Chapter 7 trustee compensation, which § 1326(b)(3) requires be paid monthly "by prorating such amount over the remaining duration of the plan." 11 U.S.C. 1326(b)(1), (2) and (3). These claims/expenses must be paid "[b]efore or at the time of each payment to creditors under the plan." 11 U.S.C. § 1326(b). In *Nardello*, the court found this language, by use of the word "before," suggests that plan confirmation is not required before payment of the standing trustee's percentage fee. *Nardello*, 514 B.R. at 114. But that interpretation squarely conflicts with the provision in § 1326(a)(2) requiring a Chapter 13 trustee to retain the payments that she receives under a proposed plan until confirmation and thus must fail in order to give effect to all applicable provisions of the statute. *In re Rivera*, 268 B.R. 292, 294 (Bankr. D.N.M. 2001).

The court also finds the interpretation in *Nardello* to be a strained reading of § 1326(b). This court finds reference to "*each* payment to creditors under the plan" clearly suggests more than one payment to creditors and is a reference to periodic payments due to creditors under a confirmed Chapter 13 plan. *Cf. In re DeSardi*, 340 B.R. 790, 809 (Bankr. S.D. Tex. 2006) ("'[P]ayment to creditors under the plan' refers to periodic partial payments on claims."). Also, reference in § 1326(b)(1) to payment of claims specified in § 507(a)(2) suggests that the payments will be made under a confirmed plan, as § 507 is the priorities provision of the Bankruptcy Code. Priority claims are not paid until a plan is confirmed. Likewise, reference in § 1326(b)(3) to the manner in which the unpaid compensation of a Chapter 7 trustee is to be paid after dismissal or conversion to a Chapter 13 case – "over the remaining duration of a plan . . .by monthly payments" – clearly refers to a confirmed plan. 11 U.S.C. § 1326(b)(3)(A). There is no suggestion in § 1326(a)(2) or § 1326(b) that unpaid Chapter 7 trustee compensation may be paid before confirmation of a debtor's Chapter 13 plan. The court thus reads § 1326(b) as setting forth priority payments to be made before or at the time of payment to creditors under a confirmed plan. *See id.* (quoting S. Rep. No. 95-989 at 142 (1978), 1978 U.S.C.C.A.N. 5787, 8928 ("Section 1326 supplements the priorities provisions of section 507.")). The court concludes that § 1326(b) does not contemplate payment of the trustee's percentage fee if a debtor's Chapter 13 plan is never confirmed. *Acevedo*, 497 B.R. at 121.

While the language of § 1326 is clear, § 586(e)(2) lacks such clarity. *See Acevedo*, 497 B.R. at 122

11

(identifying three constructions of the first sentence of § 586(e)(2), each of which it found is at least "plausible"). The first sentence of § 586(e)(2) mandates that a standing trustee "*collect* such percentage fee from *all* payments received [by the standing trustee] under *plans* in the cases under chapter 12 or 13 . . . ." 11 U.S.C. § 586(e)(2) (emphasis added). As stated above, the court agrees that the term "plans" includes both confirmed and unconfirmed plans. *See In re Dickens*, 513 B.R. at 911 (finding such construction consistent with the use of the term "plans" in § 586(a)(3)(B) and (C) and citing *Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998) for the rule of statutory construction that there is a "presumption that equivalent words have equivalent meaning when repeated in the same statute"); *Acevedo*, 497 B.R. at 122-23 (agreeing that in the Bankruptcy Code, "the term 'plan' is used to refer to both confirmed and unconfirmed plans unless the term "confirmation" or "confirmed" appears in close proximity or the context clearly dictates otherwise"). Also, the first sentence of § 586(e)(2) applies to standing trustees in both Chapter 12 and Chapter 13 cases. Thus, construing the term "plans" in that sentence to refer to both confirmed and unconfirmed plans is consistent with § 1226(a)(2), which expressly allows a standing Chapter 12 trustee to deduct the percentage fee from payments returned to a debtor if a plan is not confirmed. *See* 11 U.S.C. § 1226(a)(2).

The courts in *Acevedo* and *In re Dickens*, however, construe the term "collect" differently. Dictionary definitions of "collect" include both "to receive payment" and "[t]o gather together; to bring scattered things ... into one mass or fund; to assemble." Blacks Law Dictionary, p. 263 (6th ed. 1990). In *In re Dickens*, the court found that the "ordinary meaning of the phrase 'collect' is to 'obtain payment'" and that, as used in § 586(e)(2), "to collect a percentage fee means to 'obtain payment' of it." *In re Dickens*, 513 B.R. at 911. The court nevertheless disagreed that such payment was irrevocable. *Id.* Rather, the court concluded that § 1326(a)(2) sets forth the circumstances under which the trustee must return the collected fee to the debtor. *Id.* at 914. By contrast, the *Acevedo* court's construction is consistent with the second definition of "collect." Reading § 586(e)(2) together with § 1326(a)(2)'s directive to return payments to the debtor if a plan is not confirmed, the court construed the term "collect" to mean "to collect and hold the percentage fees pending plan confirmation, while § 1326(a)(2) tells the trustee when and how to disburse payments after confirmation or denial of confirmation, including the trustee's percentage fee." *Acevedo*, 497 B.R. at 122.

This court agrees with the *Acevedo* court's more persuasive construction. Construing "collect" to mean that the trustee receives payment of the percentage fee, as construed in *In re Dickens*, conflicts with the requirement under § 1326(a)(2) that payments made to the trustee under § 1326(a)(1)(A) be retained by

12

the trustee until confirmation or denial of confirmation. The *Acevedo* court's "collect and hold" construction, on the other hand, is consistent with that requirement. This court therefore agrees that the first sentence of § 586(e)(2) requires a standing Chapter 13 trustee to collect and hold the percentage fee from all payments received under confirmed and unconfirmed plans. *Cf. Ellwest Stereo Theater, Inc. v. Boner*, 718 F. Supp. 1553, 1578 (M.D. Tenn. 1989) ("it is the duty of the Court in construing a statute to avoid a construction which will place one statute in conflict with another and the Court should resolve any possible conflict between statutes in favor of each other, wherever possible, so as to provide harmonious operation of laws"); *Zubrod v. Duncan (In re Duncan)*, 329 F.3d 1195, 1203 (10th Cir. 2003) ("When two statutes are capable of coexistence, it is our duty, 'absent a clearly expressed congressional intention to the contrary, to regard each as effective.'"); *Nicoletti v. Brown*, 740 F. Supp. 1268, 1285, n.17 (N.D. Ohio 1987) ("Statutes which are parts of the same general scheme or plan, or relate to the same subject, are in pari materia and should be construed together.").

For all of the reasons discussed above, the court also agrees with the ultimate conclusion in both *Acevedo* and *In re Dickens* that § 1326(a)(2) requires that payments received by the standing trustee under a proposed Chapter 13 plan, which include the statutory percentage fee, must be returned to the debtor, less allowed administrative expenses, if a plan is not confirmed. This conclusion is supported by the language in the parallel statute in Chapter 12, § 1226(a). That section provides:

> (a) Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payments to the debtor, after deducting--
>
> (1) any unpaid claim allowed under section 503(b) of this title; and
>
> (2) if a standing trustee is serving in the case, the percentage fee fixed for such standing trustee.

11 U.S.C. § 1226(a). So Congress knows how to provide for allowance of a standing trustee's percentage fee in cases where a plan is not confirmed. Section § 1226(a) was enacted in 1986, two years after Congress added what is now § 1326(a). *Acevedo*, 497 B.R. at 123. At that time, § 1326 was also amended, *see* Pub. L. No. 99-554, § 230, 100 Stat. 3088 (1986), yet Congress did not include a similar provision in § 1326(a). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).

The conclusion that the payments received by the standing trustee under a proposed Chapter 13 plan,

13

including amounts for the Trustee's percentage fee, must be returned to the debtor if a plan is not confirmed is also supported by the legislative history, which states that "[i]f a private standing trustee serves, his fee is fixed by the Attorney General under proposed 28 U.S.C. 586(e), and it will be payable under proposed 11 U.S.C. 1326(a)(2)," which has since been redesignated as § 1326(b)(2).[11] H.R. Rep. No. 95-595, 328, 1978 U.S.C.C.A.N. 5963, 6284. As the court concluded earlier, § 1326(b) addresses priority claim payments to be made under a confirmed plan.

The court finds *Nardello,* relied upon by the Trustee, to be factually distinguishable and its interpretation of § 1326(a)(2) and § 586(e)(2) unpersuasive. *Nardello* involved a Chapter 13 case in which the debtor proposed a plan that included two sources of payments – monthly payments and monies received from the sale of his yacht. *Nardello*, 514 B.R. at 115. The debtor's plan was never confirmed, and the case was voluntarily dismissed. *Id.* at 107. Before the case was dismissed, the court had authorized the sale of real estate co-owned by the debtor and two non-debtors and ordered the trustee to hold the proceeds of the sale pending further order of the court. *Id.* at 106. The trustee paid the co-owners their share and, on dismissal, disbursed the proceeds remaining to the debtor, less a 6.6 percentage fee on all payments received by the trustee, including the portion of the proceeds of the sale that belonged to the co-owners. *Id.* at 107. The debtor objected to the trustee retaining any fee, arguing that § 1326(a) and (b) do not provide for payment of a percentage fee where the case is dismissed before confirmation. *Id.*

The district court rejected the debtor's argument. It stated that "[i]t is clear that the percentage fee is distinct from payments to creditors and that Section 1326(a)(2) is silent as to whether the trustee's percentage fee shall be returned when a plan is unconfirmed." *Id.* at 113. Based on that reasoning, the court concluded that § 1326(a)(2) did not require the standing trustee's percentage fee to be returned to the debtor and that § 586(e)(2) makes the percentage fee mandatory on all payments received by the trustee, including in cases dismissed before confirmation. *Id.* Later in the opinion, the court agreed with the bankruptcy court that the payments upon which the trustee calculated her percentage fee (the real estate sale proceeds) were not payments proposed under the debtor's plan and thus were not controlled by § 1326(a).[12] *Id.* at 115. It further found that it was irrelevant that no payments were made to creditors "because Section 586(e)(2) is directed to 'all payments received' by the trustee, not payments to creditors." *Id.* at 116.

---

[11] When originally enacted in 1978, § 1326 consisted only of what are now subsections (b) and (c). The current subsection (a) was added in 1984. Pub. L. No. 98-353, § 318(a), 98 Stat. 357, 389 (1984).

[12] The court notes that in allowing the trustee to take a percentage fee on the sale proceeds, the *Nardello* court ignored the "under plans" language in § 586(e)(2).

14

To the extent the *Nardello* court's conclusion was based on the fact that the real estate sale proceeds were not a source of the payments proposed by the debtor's plan and thus that § 1326(a)(2) did not apply, the case is factually distinguishable. All of the payments to the Trustee in this case were payments under Debtors' proposed plan(s). To the extent the court's conclusion was based on its determination that § 1326(a)(2) is silent as to whether the percentage fee must be returned when a plan is not confirmed, its analysis is unpersuasive. As discussed earlier, § 1326(a)(2) addresses what the trustee must do with the payments "made under paragraph (1)(A)," which are described as payments "in the amount – proposed by the plan." Even the *Nardello* court found that the amounts received by the trustee under the plan "cover both payments to creditors and the trustee's percentage fee." *Id*. at 112-13. The payment amounts that must be returned to debtors when their plan is not confirmed must include the trustee's percentage fee.

In summary, the court concludes that § 586(e)(2) requires a standing Chapter 13 trustee to collect the applicable percentage fee from all payments that the trustee receives under both confirmed and unconfirmed plans and to hold the fee collected pending plan confirmation. Disbursement of the payments being held, which include the percentage fee, is governed by § 1326(a)(2) and (b). Where a plan is not confirmed, § 1326(a)(2) requires the trustee to return all such payments, including the statutory percentage fee being held by the trustee, after deducting any allowed administrative expense claims.

## **CONCLUSION**

Debtor seeks an order amending the court's December 22, 2016, Dismissal Order to remove the provision allowing the Trustee to deduct statutory fees from the plan payments ordered to be refunded. In light of the foregoing discussion, and because this case was dismissed before confirmation of a plan, Debtor's Motion to Amend Dismissal Order will be granted.

In her Motion to Disgorge Fees, Debtor objects to the Trustee's Final Report and Account to the extent it provides for distribution of her statutory fee from the funds to be returned to Debtors, and seeks an order requiring the Trustee to disgorge such fee. As the Dismissal Order will be amended to remove the language "less statutory fees," the distribution of the Trustee's statutory fee set forth in her Final Report and Account lacks court authorization. Debtor's objection to the Trustee's Final Report and Account is thus well-taken and her Motion to Disgorge Fees will also be granted.

The court will enter separate orders on the motions in accordance with this Memorandum of Decision.

###